BEN BOLT–PALITO BLANCO CONSOLIDATED INDEPENDENT SCHOOL DISTRICT, Petitioner,

v.

TEXAS POLITICAL SUBDIVISIONS PROPERTY/CASUALTY JOINT SELF–INSURANCE FUND, Respondent.

No. 05–0340.

Supreme Court of Texas.

Argued March 22, 2006.

Decided Dec. 29, 2006.

Rehearing Denied Feb. 23, 2007.

Mark C. Brodeur, Brodeur Law Firm, Dallas, TX, and Nora Barrera, Alice, TX, for petitioner.

Merritt M. Clements, Judith R. Blakeway, Stephen T. Dennis, Strasburger & Price, San Antonio, TX, for respondent.

Rafael Edward Cruz, Office of the Attorney General, Austin TX, for Attorney General of Texas.

Rance L. Craft, Office of the Attorney General, Austin TX, for amicus curiae.

Justice O'NEILL delivered the opinion of the Court, joined by Chief Justice JEFFERSON, Justice WAINWRIGHT, Justice BRISTER, Justice MEDINA, and Justice JOHNSON.

The issue in this insurance coverage dispute is whether a self-insurance fund composed of local political subdivisions enjoys governmental immunity against a fund member school district's coverage claim. In the suit underlying this appeal, fund member Ben Bolt–Palito Blanco Consolidated Independent School District ("Ben Bolt") sued the Texas Political Subdivisions Property/Casualty Joint Self–Insurance Fund (the "Fund") after the Fund denied a claim for benefits under its policy. The Fund asserted immunity in a plea to the jurisdiction, which the trial court denied. A divided court of appeals reversed, concluding that the Fund is immune from suit. 163 S.W.3d 172, 176–77. We agree that the Fund possesses governmental immunity. However, after the court of appeals rendered its judgment, the Legislature enacted a limited immunity waiver for breach of contract claims against governmental entities.[1] We conclude that the statutory waiver applies to this insurance-coverage dispute. Accordingly, we reverse the judgment of the court of appeals.

## I. Background

The Texas Interlocal Cooperation Act (the "Act") allows political subdivisions to contract with one another to more efficiently share resources and responsibilities. TEX. GOV'T CODE §§ 791.001–.033 ("The purpose of this chapter is to increase the efficiency and effectiveness of local governments by authorizing them to contract, to the greatest possible extent, with one another and with agencies of the state."). Id. § 791.001. Under the Act, a local government may contract with another local government to perform authorized governmental functions and services. Id. § 791.011 Local governments under the Act include municipalities, special districts, counties, and other political subdivisions, as well as combinations of such entities. Id. § 791.003(4).

Ninety-two local governmental entities formed the Fund involved in this dispute by entering into an Interlocal Cooperation Agreement to pool funds to provide casualty insurance to participants. The Fund provides a self-insurance risk pool and claim administration for its members. Participants in the Fund include eight counties, six municipalities, forty-three independent school districts, and various special districts and other political subdivisions.

Ben Bolt, a small school district in Jim Wells County, purchased an insurance policy from the Fund for a coverage period between April 2002 and 2003. In Decem-

1. Act of May 23, 2005, 79th Leg., R.S., ch. 604, § 1, 2005 Tex. Gen. Laws 1548 (codified at TEX. LOC. GOV'T CODE §§ 271.151–.160).

ber of 2002, Ben Bolt sustained extensive water and mold damage to one of its school facilities and submitted a claim to the Fund. Until that point Ben Bolt had paid, and the Fund had accepted, all premiums due under the policy. The Fund denied the claim on the basis that the alleged loss was not covered under Ben Bolt's policy. Ben Bolt then filed a declaratory-judgment action seeking a determination that the loss was a covered occurrence under the insurance agreement's terms, and any "other further relief" to which it might be entitled. In response, the Fund asserted immunity in a plea to the jurisdiction and motion to dismiss, which the trial court denied. The Fund then filed an interlocutory appeal. TEX. CIV. PRAC. & REM.CODE § 51.014(a)(5). The court of appeals held that, as a governmental entity, the Fund is entitled to immunity from suit; finding no legislative waiver of that immunity, the court of appeals reversed and dismissed the case for want of jurisdiction. 163 S.W.3d 172, 177.

In its petition to this Court, Ben Bolt contends the Fund is not a governmental entity entitled to immunity. Alternatively, Ben Bolt claims that any immunity the Fund may possess derives from its member political subdivisions and cannot be asserted against its source. And even if the Fund may assert immunity against its members, Ben Bolt argues, that immunity has been waived in a number of ways: first, recently enacted section 271.152 of the Local Government Code is a clear expression of legislative intent to waive governmental immunity from suit on contract claims, TEX. LOC. GOV'T CODE § 271.152; second, the Act contains an implied waiver of immunity from suit for governmental units that contract under its authority, TEX. GOV'T CODE §§ 791.001–.033; and third, even absent a statutory waiver,

the Fund waived its immunity from suit by accepting payment of Ben Bolt's premiums and inducing reliance. Finally, Ben Bolt argues that the Legislature waived governmental immunity for actions brought under the Uniform Declaratory Judgments Act ("UDJA").

The Fund counters that it is a governmental entity existing under the Legislature's authority and thus enjoys immunity in its own right irrespective of its members. Moreover, the Fund argues that Chapter 271 is not a clear and unambiguous waiver of immunity because it is unclear whether that waiver applies to the Fund's insurance agreement with its members, some of which are excluded from the waiver. The Fund also contends there is no implied waiver or waiver by conduct, and that the UDJA does not prevent the Fund from asserting immunity here. We granted Ben Bolt's petition for review to determine the nature and extent of the Fund's alleged immunity from suit.

## II. Discussion

### A. Standard of Review

■ Governmental immunity from suit defeats a trial court's jurisdiction. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex.1999). Whether a trial court has jurisdiction is a question of law subject to *de novo* review. *See Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex.2002). Because the issue in this case is whether the trial court lacked jurisdiction due to the Fund's assertion of immunity, our review is *de novo*.

### B. Sovereign and Governmental Immunity

■ Sovereign immunity protects the State, its agencies, and its officials from lawsuits for damages.[2] *See Tooke v. City*

2. Although the court of appeals termed the immunity the Fund possessed as "sovereign,"

political subdivisions of the State actually enjoy governmental immunity. Though closely

*of Mexia,* 197 S.W.3d 325, 331 n. 11 (Tex. 2006); *IT–Davy,* 74 S.W.3d at 853–54; *Gen. Serv. Comm'n v. Little–Tex Insulation Co., Inc.,* 39 S.W.3d 591, 594 (Tex. 2001); *Fed. Sign v. Tex. S. University,* 951 S.W.2d 401, 405 (Tex.1997). Under this centuries-old common-law doctrine, the sovereign is immune from liability and also from lawsuits. *See IT–Davy,* 74 S.W.3d at 853; *Little–Tex,* 39 S.W.3d at 594; *Fed. Sign,* 951 S.W.2d at 405. Immunity from liability shields the State from judgments. *IT–Davy,* 74 S.W.3d at 853; *Little–Tex,* 39 S.W.3d at 594; *Fed. Sign,* 951 S.W.2d at 405. Immunity from suit prohibits a suit against the State unless the Legislature grants consent. *Little–Tex,* 39 S.W.3d at 594. By entering into a contract the State waives its immunity from liability but not its immunity from suit. *Id.* Thus, even if the State acknowledges liability on a claim, immunity from suit bars a remedy until the Legislature consents to suit. *Taylor,* 106 S.W.3d at 695.

■ The State's sovereign immunity extends to various divisions of state government, including agencies, boards, hospitals, and universities. *Tooke,* 197 S.W.3d at 331; *Taylor,* 106 S.W.3d at 694 n. 3. The appurtenant common-law doctrine of governmental immunity similarly protects political subdivisions of the State, including counties, cities, and school districts. *Taylor,* 106 S.W.3d at 694 n. 3; *see also Harris County v. Sykes,* 136 S.W.3d 635, 638 (Tex.2004). A political subdivision enjoys governmental immunity from suit to the extent that immunity has not been abrogated by the Legislature. *See IT–Davy,* 74 S.W.3d at 853.

It is clear that the Fund in this case is composed of members which, like Ben Bolt, are themselves governmental units entitled to immunity. However, the Fund

asserts discrete governmental-unit status in its own right separate and apart from its members. If it is true, as the Fund contends, that the Fund itself enjoys immunity from suit, then the extent to which the Fund might derive immunity from its members is immaterial. Accordingly, we begin by examining the nature of the Fund.

### C. The Fund

■ Chapter 2259 of the Texas Government Code authorizes "governmental unit[s]," which include "local government[s]," to self insure. TEX. GOV'T CODE §§ 2259.031–.034; 2259.001. The issuance of public securities or use of money for the purpose of funding self insurance "is a public purpose of the governmental unit." *Id.* § 2259.032. Chapter 2259 specifically provides that a governmental unit's establishment and maintenance of a self-insurance program "is not a waiver of immunity." *Id.* § 2259.002. Types of local governments able to self-insure under Chapter 2259 include a "municipality or other political subdivision of this state or a combination of political subdivisions, including a combination created under Chapter 791." *Id.* § 2259.001(2).

Chapter 791 of the Government Code, known as the Interlocal Cooperation Act, allows local governments to contract with each other to collectively perform certain governmental functions. *Id.* § 791.011(a). The Act defines the term "local government" to mean a "county, municipality, special district, ... or other political subdivision of this state or another state" or a combination of two or more political subdivisions. *Id.* § 791.003(4)(A), (E). Because the term "local government" includes a combination of political subdivisions, the

related and often used interchangeably, sovereign immunity and governmental immunity protect distinct entities. *Wichita Falls State*

*Hosp. v. Taylor,* 106 S.W.3d 692, 694 n. 3 (Tex.2003).

Fund itself would appear to enjoy local-government status under the Act.[3] Further indication that the Legislature intended such pooled entities to operate as distinct governmental units is found in the provisions of Chapter 2259, which allows local governments to self-insure, together with the provisions of Chapter 791 allowing local governments to pool resources for that purpose.

We have said that where the governing statutory authority demonstrates legislative intent to grant an entity the "nature, purposes, and powers" of an "arm of the State government," that entity is a government unit unto itself. *See Harris County Flood Control Dist. v. Mann*, 135 Tex. 239, 140 S.W.2d 1098, 1101 (1940) (holding statute creating flood-control District demonstrated legislative intent that the District be a state agency and a political entity distinct from the County, despite the identical boundaries of the District and County). A district with "[s]uch powers of government and with the authority to exercise such rights, privileges and functions" to achieve its purpose is considered a governmental unit. *Id.* (quoting Tex. Const. art. XVI § 59(b)). In *Mann*, the District had a governmental purpose—flood prevention, reclamation and conservation of land—and public funding to carry out its mission. *Id.* We reasoned that the "nature, purposes and powers" of the Act creating the flood-control District showed legislative intent that "this District shall exist and function as a governmental agency and a body politic and corporate, separate, independent, and distinct within itself." *Id.*

Similarly, Chapter 2259 and the Interlocal Cooperation Act imbue self-insurance pools with nature, purposes, and powers reflecting the Legislature's intent that the Fund exist as a discrete governmental unit. An interlocal contract may provide a governmental function that each contracting party is authorized to individually perform. Tex. Gov't Code § 791.011(c)(2). The Legislature has expressly authorized combinations of political subdivisions formed under the Act "to perform governmental functions and services." Tex. Gov't Code §§ 791.003(4)(E), 791.011(a). The Act defines "governmental functions and services" to include any "governmental functions in which the contracting parties are mutually interested." *Id.* § 791.003(3)(N). Local governments clearly have an interest in guarding against risk, and the Legislature has explicitly authorized combinations of political subdivisions created under the Interlocal Cooperation Act to provide self-insurance. Tex. Gov't Code §§ 2259.001(1)-(2), 2259.031. The Legislature has also authorized these combinations to issue public securities and use available money to finance a self-insurance pool, which is defined as a "public purpose" of the governmental unit. *Id.* §§ 2259.001(1)-(2), 2259.031(b)(1), 2259.032. In sum, the Legislature has determined self-insurance to be a function of local governments, and we see no reason why legislatively approved pooling of resources to perform this function would diminish its governmental character. *See* Op. Tex. Att'y Gen. No. MW–347 at 2 (1981) (stating "[s]elf-insurance is

---

**3.** We note that this definition of "local government" does not mean that the Fund is a governmental unit for all purposes, but only for purposes of the Interlocal Cooperation Act. *Id.* § 791.003 (confining the definition of "local government" to "[withi]n this chapter"). Indeed, within the Government Code, the Legislature defines the term "local government" to include and also to exclude school districts for different purposes. *Compare* Tex. Gov't Code § 772.009(i) (defining "local governmental entity" to include a school district concerning governmental planning), *with* Tex. Gov't Code § 783.003(3) (defining "local government" to exclude school districts under the Uniform Grant and Contract Management Act).

a function of local governments if the government does not have insurance.").

Many of our courts of appeals have considered self-insurance pools, though composed of political subdivisions, to be distinct governmental entities apart from their membership. *See, e.g., Campbell v. Tex. Employers' Ins. Ass'n,* 920 S.W.2d 323, 329–30 (Tex.App.-Houston [1st Dist.] 1995, no writ) (citing with approval a Texas court of appeals case that refers to a self-insurance risk pool as a governmental entity to hold that a private company that contracted to provide services to the Texas Association of School Boards' self-insurance fund was not entitled to governmental immunity); *TML Intergovernmental Employee Benefits Pool v. Prudential Ins. Co. of Am.,* 144 S.W.3d 600, 605–07 (Tex.App.-Austin 2004, pet. denied) (holding an insurance pool bringing a declaratory judgment waived immunity from suit, necessarily implying possession of immunity in order to waive it); *Milner v. City of Leander,* 64 S.W.3d 33, 38–40 (Tex.App.-Austin 2000, no pet.) (treating self-insurance fund as governmental entity and concluding that the Legislature did not waive its immunity); *cf. Campbell,* 920 S.W.2d at 329–30 (suggesting that school boards' self-insurance fund was a governmental entity, but immunity did not extend to private company providing claims-adjustment services to the fund); *Tex. Workers' Comp. Comm'n v. City of Bridge City,* 900 S.W.2d 411, 414 (Tex.App.-Austin 1995, writ denied) (holding that because municipalities' risk pool derived its existence and powers from legislative enactments, it was subject to legislative control and supremacy to the same extent as other political subdivisions); *GAB Bus. Servs., Inc. v. Moore,* 829 S.W.2d 345, 350–51 (Tex.App.-Texarkana 1992, no writ) (intimating that municipalities' risk pool was a governmental entity, but holding that immunity did not extend to private company that contracted with pool to adjust claims); *see also Tex. Mun.*

*League Intergovernmental Risk Pool v. Tex. Workers' Comp. Comm'n,* 74 S.W.3d 377, 384 (Tex.2002) (noting that, in determining whether certain Labor Code provisions applied to the risk pool itself in addition to its 1600 member municipalities, the Commission did "not dispute that [the] Risk Pool itself qualifies as a political subdivision" within the meaning of those provisions).

We conclude that the Fund's "nature, purposes and powers" demonstrate legislative intent that it exist as a distinct governmental entity entitled to assert immunity in its own right for the performance of a governmental function. With regard to that function, the Fund enjoys the same governmental immunity as other political subdivisions. Having concluded that the Fund enjoys immunity in its own right, we need not decide whether the Fund's immunity is also derivative of its members.

### D. Waiver of Immunity

■ With the Fund's governmental immunity shield, Ben Bolt's claims are barred absent a waiver of that immunity. It is the province of the Legislature to consent to a suit against a governmental entity. *IT–Davy,* 74 S.W.3d at 853. "We have consistently deferred to the Legislature to waive sovereign immunity from suit, because this allows the Legislature to protect its policymaking function." *IT–Davy,* 74 S.W.3d at 854. Because immunity from suit protects the public coffers, "the claims process is tied to the appropriations process, and the priorities that guide the latter should also inform the former." *Tooke,* 197 S.W.3d at 332. The exposure of governmental entities to liability may shift tax resources away from their intended purposes and toward defending lawsuits and paying judgments, thereby hampering government functions. *IT–Davy,* 74 S.W.3d at 854. For this rea-

son, the Legislature is better suited than the courts to weigh conflicting public policies associated with waiving immunity and subjecting the government to increased liability, the burden of which the public must bear. *Id.*

■ Ben Bolt argues that Section 271.152 of the Local Government Code provides a clear and unambiguous waiver of the Fund's immunity from suit for breach of its insurance agreement with Ben Bolt. That section provides:

A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

Tex. Loc. Gov't Code § 271.152.[4] The statute's plain language allows for enforcement of contracts against local governmental entities by waiving their immunity from suit. The Fund does not dispute that the statutory waiver language itself is clear and unambiguous. However, the Fund argues that Section 271.152 provides only a limited waiver for some governmental units in certain circumstances, and does not apply to the Fund or its insurance agreements.

First, the Fund points out that Section 271.151(2) defines a "[c]ontract subject to this subchapter [subchapter I of chapter 271]" as "a written contract stating the essential terms of the agreement for providing goods or services *to* the local governmental entity that is properly executed on behalf of the local governmental entity." *Id.* § 271.151(2) (emphasis added). The Fund argues that its insurance contract with Ben Bolt is not a "[c]ontract subject to this subchapter" because, under the pol-

icy, no goods or services are provided *to* the Fund; rather, the Fund provides insurance to its contracting members in exchange for payments. Consequently, the Fund contends, the insurance agreement is not subject to the statutory waiver.

It is true that Ben Bolt is a consumer of insurance that the Fund offers. But the relationship between the Fund and its members differs from the ordinary consumer/seller relationship. As the Fund has acknowledged, its members elect a governing board, and a board subcommittee resolves claims disputes. To that extent, at least, the Fund's members provide services to the Fund. Moreover, the statute's legislative history indicates that, by enacting section 271.152, the Legislature intended to loosen the immunity bar so "that *all* local governmental entities that have been given or are given the statutory authority to enter into contracts shall not be immune from suits arising from those contracts." House Comm. On Civil Practices, Bill Analysis, Tex. H.B. 2039, 79th Leg., R.S. (2005) (emphasis added). There is no indication that the Legislature intended to exclude self-insurance fund agreements from enforcement. While the mere act of self-insuring does not itself constitute a waiver of immunity, *see* Tex. Gov't Code § 2259.031, entering into "a written contract stating the essential terms of [an] agreement for providing goods or [insurance] services to [a] local governmental entity" clearly does. Tex. Loc. Gov't Code § 271.151(2), .152.

The Fund next contends Section 271.152 does not clearly and unambiguously waive its immunity from suit because some of the Fund's members, such as counties, do not meet Section 271.151(3)'s definition of a "local governmental entity." But as we

---

4. Because Section 271.152 is partially retroactive, it would waive the Fund's immunity even though it was enacted after Ben Bolt purchased the insurance policy. *See Tooke,* 197 S.W.3d at 329 n. 7 (citing Sections 271.152–.154 of the Local Government Code).

have said, the Fund itself is a discrete governmental unit separate and apart from its members, and its immunity derives from the performance of governmental functions, not from the immunities of those members that combined to form it. The only entities expressly excluded from the statutory waiver are counties and units of state government, and the Fund itself is neither of these.

Because the Fund is a "local governmental entity" as defined by Section 271.151(3), and "was authorized ... to enter" and did in fact enter into "a written contract stating the essential terms of the agreement for providing [insurance] services to [a] local governmental entity," which agreement was properly executed, Tex. Loc. Gov't Code § 272.151(2), we conclude that the statutory waiver applies to this insurance-coverage dispute.

Ben Bolt asserts a number of alternative grounds upon which it claims the Fund's immunity from suit was waived, but does not claim that success on these other points would afford it greater relief. Because we hold that Section 271.152 of the Local Government Code waives the Fund's immunity from suit, we do not consider them.

### III. Conclusion

Because Section 271.152 of the Local Government Code waives the Fund's immunity from Ben Bolt's claim arising out of the insurance agreement between the parties, we reverse the court of appeals' judgment and remand to the trial court for further proceedings.

Justice WILLETT delivered a dissenting opinion, joined by Justice HECHT.

Justice GREEN did not participate in the decision.

Justice WILLETT, joined by Justice HECHT, dissenting in part.

I agree with most of the Court's opinion, but respectfully dissent from Part II(D) because I do not believe that section 271.152 of the Local Government Code clearly and unambiguously waives the Fund's governmental immunity.

I agree with the Court that the Fund is a discrete governmental unit performing a governmental function, and therefore possesses immunity from suit unless the Legislature has waived it. I also agree that the Fund is a "local governmental entity" under sections 271.151(3) and 271.152. However, I part company on whether the Legislature in 2005 clearly waived the Fund's immunity for two principal reasons: (1) deciding whether a contract is "subject to this subchapter" requires this Court to actually see and read the contract, which exists nowhere in the record; and (2) even accepting Ben Bolt's description of the contract, it falls outside the restrictive language of the statute's immunity waiver (or at minimum does not "clearly and unambiguously" fall within it).

It is axiomatic that "a waiver of immunity must be clear and unambiguous," *Tooke v. City of Mexia*, 197 S.W.3d 325, 333 (Tex.2006), *see also* TEX. GOV'T CODE § 311.034 (immunity waivers must be "effected by clear and unambiguous language"), and any ambiguity must be resolved in favor of retaining immunity, *see Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697 (Tex.2003). As the Court's opinion explains, the Legislature has waived immunity in certain contract actions against local governments. A contract subject to this limited immunity waiver is "a written contract stating the essential terms of the agreement for providing goods or services *to* the local governmental entity...." TEX. LOC. GOV'T CODE § 271.151(2) (emphasis added). As the

parties describe the contract, however, this dispute does not concern a contract whereby Ben Bolt provided goods or services to the Fund, the entity claiming governmental immunity. Quite the opposite: the Fund provided goods or services to Ben Bolt.

Rightly or wrongly, the Legislature chose the preposition "to"—not the opposite term "from"—and this is a grammatical distinction with a difference. As any fax cover sheet (or elementary school valentine card) makes clear, the words have diametrically opposite definitions and convey diametrically opposite meanings; generally, the preposition "to" means "in a direction toward" while "from" means "in a direction away." The core commodity covered by the agreement, casualty insurance, flows *from* the Fund, not *to* the Fund as the statute requires.

Certainly, reasonable people can argue that construing the statute as not providing a waiver of immunity impairs the purpose underlying the overall scheme, but we interpret statutory text as we find it. The clearest manifestation of what lawmakers intended is what lawmakers enacted, and it is not this Court's role to embroider or spruce up statutory language, particularly when such embellishment requires us to read a term as really meaning the polar opposite. This is not an overly technical interpretation but one that recognizes the special deference owed legislative policy choices in the context of contract claims against the government, even if critics find those choices odd, unfair, or imprudent. Moreover, it is an interpretation that acknowledges the settled principle that immunity waivers must be unequivocal.

The Court relies principally on two arguments to scale the "to/from" hurdle. First, it avers that "the relationship between the Fund and its members differs from an ordinary consumer/seller relationship" and that because members like Ben Bolt "elect a governing board, and a board subcommittee resolves claims disputes," the members do in fact provide services to the Fund. 212 S.W.3d 320, 327. The Court insists that this suffices to waive the Fund's immunity, but in reaching to satisfy the definitional requirement of section 271.151(2), the Court disregards the actual waiver provision of section 271.152. This section waives immunity from suit "for the purpose of adjudicating a claim for breach of the contract," TEX. LOCAL GOV'T CODE § 271.152, and that contract must be one of providing goods or services to a local government entity, *id.* § 271.151(2). Ben Bolt's ancillary activities may well be found in the Fund's by-laws, as the Fund's counsel surmised at oral argument, but neither Ben Bolt nor the Court cites any record evidence that shows these activities are prescribed by the insurance contract that Ben Bolt alleges was breached. Indeed, the sparse record in this case excludes the Interlocal Cooperation Contract, the Fund's by-laws and any other pertinent documents that might describe in detail the parties' contractual relationship. This is a breach of contract case, and when the statute waiving immunity requires that the contract specify "the essential terms of the agreement for providing goods or services to the local governmental entity," *id.*, it seems reasonable for the party alleging breach of that contract to produce it, not just describe it, particularly when its terms dictate whether immunity survives.

In any event, even if the described board- and claims-related activities were detailed in the insurance contract itself, these seem to be little more than oversight-related activities to help set up and maintain the Fund, and the Legislature has expressly preserved immunity for such functions: "[t]he establishment and maintenance of a self-insurance program by a governmental unit is not a waiver of immu-

nity...." Tex. Gov't Code § 2259.002; *see also* Tex. Gov't Code §§ 2259.001(1)-(2) (defining "governmental unit" to include "a combination of political subdivisions, including a combination created under Chapter 791," the Interlocal Cooperation Act). Given these gaps and the governing statutory framework, it is difficult to conclude that section 271.152 has clearly and unambiguously waived the Fund's immunity from suit.

Second, the Court cites a House bill analysis to bolster its view that "to" should also be read to mean "from," and concludes, "There is no indication that the Legislature intended to exclude self-insurance fund agreements from enforcement." 212 S.W.3d at 327. There *is* such indication: the literal text that our elected representatives and senators enacted. As we recently cautioned in *Sheshunoff,* if the statutory text is plain, "we must take the Legislature at its word and not rummage around in legislative minutiae." *Alex Sheshunoff Mgmt. Servs. v. Johnson,* 209 S.W.3d 644, 652 n. 4 (Tex.2006). In any event, the bill analysis quoted by the Court offers such indication, too, in qualifying language found in the very same sentence; this language, omitted by the Court, is shown here in italics: "all local governmental entities that have been given or are given the statutory authority to enter into contracts shall not be immune from suits arising from those contracts, *subject to the limitations set forth in C.S.H.B. 2039.*" [1] House Comm. On Civil Practices, Bill Analysis, Tex. H.B. 2039, 79th Leg., R.S. (2005) (emphasis added). Even if the Legislature intended to waive broadly a local government's immunity on contracts, it expressly recognized that terms and conditions within subchapter I itself would exclude some contracts from this waiver. One such limitation is section 271.151(2): the suit must be on a contract to provide goods or services *to* a local governmental entity.

At minimum, the Legislature's selection of "to" instead of the directionally opposite "from" renders the purported waiver less than conclusive and a flimsy basis for holding that the Legislature has waived immunity beyond all doubt. More fundamentally, it is difficult to conclude with unalloyed certainty that a contract is "subject to this subchapter" and thus an undeniable waiver of immunity when the contract itself appears nowhere in the record.

In sum, the statute's immunity language does not evince the Legislature's unequivocal intent to cover this specific contract. Accordingly, since we must resolve uncertainties over legislative consent in favor of immunity, I would hold that the Legislature has not abrogated the Fund's immunity from suit.

I find none of Ben Bolt's other arguments for disregarding the Fund's immunity persuasive and would affirm the judgment of the court of appeals.

---

**1.** These dueling snippets of legislative history illustrate the peril of placing undue reliance on secondary materials. Anyone looking for a preferred interpretation can usually find a ready ally lurking in the legislative record, even if the statute's literal text points the opposite direction. I do not reject out of hand the principled use of legislative history to unearth reliable guidance (unless the text's plain language is unequivocal), *Sheshunoff,* 209 S.W.3d at 651–52, but it certainly merits a jurisprudential grain of salt. The enacted, voted-on text is what constitutes the law. We may not know the origin of a phrase tucked into a bill analysis, but we do know it is unwise to consider such materials a watertight index of the collective wishes of 181 lawmakers.