**TEXAS ASSOCIATION OF SCHOOL BOARDS RISK MANAGEMENT FUND, Appellant,**

v.

**BENAVIDES INDEPENDENT SCHOOL DISTRICT, Appellee.**

No. 04–06–00349–CV.

Court of Appeals of Texas, San Antonio.

Jan. 31, 2007.

Dale Jefferson, Christopher W. Martin, Martin, Disiere, Jefferson & Wisdom, L.L.P., Houston, Robin I. Krumme, Martin, Disiere, Jefferson & Wisdom, L.L.P., Max Renea Hicks, Law Office of Max Renea Hicks, Austin, Frank J. Enriquez, Law Office of Frank Enriquez, McAllen, for appellant.

Mark C. Brodeur, Brodeur Law Firm, P.L.L.C., Dallas, Charles L. Barrera, Barrera & Barrera Law Firm, Roland L. Leon, Stephen J. Chapman, Baker, Leon & Fancher, L.L.P., Corpus Christi, for appellee.

Sitting: KAREN ANGELINI, Justice, PHYLIS J. SPEEDLIN, Justice, REBECCA SIMMONS, Justice.

## OPINION

Opinion by KAREN ANGELINI, Justice.

The Texas Association of School Boards Risk Management Fund appeals the trial court's denial of its plea to the jurisdiction. Because immunity from suit with respect to the contractual claims has been waived by chapter 271 of the Texas Local Government Code, we affirm the trial court's order in part. However, because there has been no waiver of immunity from suit with respect to the tort claims, we reverse the trial court's order in part and render judgment dismissing the tort claims against the Fund for want of jurisdiction.

### BACKGROUND

Appellant Texas Association of School Boards Risk Management Fund ("the Fund") is an administrative agency of local governments, primarily school districts, which have joined in common purpose under the Interlocal Cooperation Act, *see* TEX. GOV'T CODE ANN. §§ 791.001–.033 (Vernon 2004 & Supp.2006), to self-insure against certain property and casualty claims. Appellee Benavides Independent School District ("the School District") is one of the school districts that entered into an Interlocal Cooperation Agreement with the Fund. When the School District suffered extensive water damage in the amount of $17 million, it submitted a claim to the Fund, which, after determining that the loss was not covered under the agreement, denied the claim.

In the underlying case, the School District brought claims sounding in both contract and tort. Specifically, the School District sued the Fund for breach of contract, DTPA, breach of the duty of good faith and fair dealing and fiduciary duties, negligence, and gross negligence. The

School District also brought a declaratory action, seeking a declaration of coverage for the claims made. In defending itself from these claims, the Fund filed a plea to the jurisdiction based on governmental immunity, which was subsequently denied by the trial court. The Fund then brought this accelerated, interlocutory appeal.

### GOVERNMENTAL IMMUNITY

█ Sovereign immunity protects the State from lawsuits for money damages. *Reata Constr. Corp. v. City of Dallas,* 197 S.W.3d 371, 374 (Tex.2006). Unless expressly waived, its political subdivisions are also entitled to such immunity, referred to as governmental immunity. *Id.* Governmental immunity encompasses both immunity from liability and immunity from suit. Immunity from liability protects the governmental unit from judgments even if it has consented to the suit. *Id.* In contrast, immunity from suit bars a suit unless the governmental unit has consented; as such, immunity from suit deprives a trial court of subject-matter jurisdiction. *Id.* Because the existence of subject-matter jurisdiction is a question of law, we review the trial court's ruling on a plea to the jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 228 (Tex.2004).

Here, there is no dispute that both the Fund and the School District are entitled to governmental immunity. *See Ben Bolt–Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self–Ins. Fund,* 212 S.W.3d 320, 326 (Tex.2006) (holding that self-insurance fund, comprised of local governments, exists "as a distinct governmental entity entitled to assert immunity in its own right for the performance of a governmental function" and, as such, "enjoys the same governmental immunity as other political subdivisions"); *Wichita Falls State Hosp. v.*

*Taylor,* 106 S.W.3d 692, 694 n. 3 (Tex.2003) ("Governmental immunity . . . protects political subdivisions of the state, including counties, cities, and school districts."). Instead, the dispute concerns whether immunity from suit exists between political subdivisions of the state, and if so, whether it has been waived.

### A. *Immunity Between Political Subdivisions of the State*

█ On appeal, the Fund argues that governmental immunity protects it from the School District's claims. In response, the School District argues that there is no governmental immunity between political subdivisions of the state. For support, the School District relies on two cases: *Texas Workers' Compensation Commission v. City of Eagle Pass/Texas Municipal League Workers' Compensation Joint Insurance Fund,* 14 S.W.3d 801 (Tex.App.-Austin 2000, pet. denied), and *State v. City of Galveston,* 175 S.W.3d 1 (Tex.App.-Houston [1st Dist.] 2004, pet. granted). However, because both cases involve the *State* suing a city, not two political subdivisions of the state suing one another, they are distinguishable and do not apply here.

In *City of Eagle Pass,* 14 S.W.3d at 802–03, the Texas Workers' Compensation Commission ("TWCC") found that the City of Eagle Pass had violated provisions of the Texas Labor Code and assessed administrative penalties against the City. At the administrative hearing, the City argued that governmental immunity prevented it from having to pay the administrative penalties. *Id.* at 803. The Administrative Law Judge disagreed, and the City appealed the ALJ's decision to district court. *Id.* In reversing the ALJ's decision, the district court concluded that governmental immunity prevented the State's imposition of penalties absent the Legislature's express waiver of the subdivision's immunity.

*Id.* The TWCC then appealed to the Austin Court of Appeals.

On appeal, the TWCC argued that because municipalities and other political subdivisions of the state exist under the authority of the state and are subject to the state's regulatory authority, they do not enjoy immunity from state regulatory authority. *Id.* In agreeing with the TWCC, the court of appeals emphasized that the City offered "no authority for the proposition that political subdivisions such as municipalities are sovereign entities." *Id.* Instead, the court explained that municipalities are merely created as political subdivisions of the state and "represent no sovereignty distinct from the state and possess only such powers and privileges as have been expressly or impliedly conferred upon them." *Id.* (quoting *Payne v. Massey*, 145 Tex. 237, 196 S.W.2d 493, 495 (1946)).

> While it is well established that sovereign immunity protects the federal government from state suits and vice versa, *this immunity stems from the basic precept of federalism that the federal and several state governments each possess independent sovereignty.* Because political subdivisions of the state do not possess such independent sovereignty, *they have no immunity as against the state.*
>
> Under the common law doctrine of immunity, municipalities and other political subdivisions of the state possess limited immunity from actions brought by private third parties. This immunity results from agency principles and the fact that municipalities and political subdivisions are agents of the state. A political subdivision's immunity is a privilege afforded it based on its existence as a subdivision of the state, and a municipality, as a political subdivision of the state, is not liable for the acts or conduct of its

officers or employees. Thus, a political subdivision's *derivative immunity acts as a shield against the state,* from which the subdivision derives its immunity.

*Id.* at 803–04 (emphasis added) (quotations and citations omitted). As such, the Austin Court of Appeals reasoned that a political subdivision could not use immunity to shield itself from the State when it only enjoyed immunity because of the State. The court also found unpersuasive cases cited by the City, explaining that those cases involved conflicts between state and federal governments, which, under federalism principles, are independent sovereigns. *Id.* at 804. According to the court, because political subdivisions in Texas are not independently sovereign, the cases cited by the City offered no support. *Id.*

Likewise, applying *City of Eagle Pass's* analysis to the facts presented here, *City of Eagle Pass* offers the School District no support for its argument that there is no immunity between political subdivisions. The court in *City of Eagle Pass* reasoned that a city could not claim immunity from the state, the entity from which it derived its immunity. It said nothing about entities which both derive immunity from the state.

The other case relied on by the School District is *City of Galveston.* In that case, the State, on behalf of the Texas Department of Transportation, sued the City of Galveston for negligence in the installation, maintenance, and upkeep of a water line. 175 S.W.3d at 4. In response, the City filed a plea to the jurisdiction, arguing governmental immunity. *Id.* In holding that governmental immunity does not shield the City from claims brought by the State, the First Court of Appeals explained that municipalities are political subdivisions of the state and "enjoy immunity from suit for governmental activity, not due to any inherent sovereignty, but, rather, because

the State cloaks them with the State's sovereign immunity from suit while they carry out the State's public purposes." *Id.* at 5. "Thus, any immunity from suit that a municipality enjoys derives solely from the State's immunity—the former receives immunity from suit only when carrying out governmental activities implicitly delegated to it to carry out in the latter's stead." *Id.* It then discussed *City of Eagle Pass* and agreed with that court's reasoning. *Id.* at 6–7. Accordingly, it held that "governmental immunity does not shield a municipality from the State's suit asserting tort claims for actual damages because any immunity that a municipality enjoys derives from the State's own immunity." *Id.* at 7.

Once again, because *City of Galveston* pertained to the *State* suing its own political subdivision, we decline to apply its holding to the facts presented here.[1]

In response to the School District's argument that immunity does not exist between political subdivisions, the Fund relies on *City of Texarkana v. City of New Boston*, 141 S.W.3d 778 (Tex.App.-Texarkana 2004, no pet.), *abrogated on other grounds by Tooke v. City of Mexia*, 197 S.W.3d 325 (Tex.2006).[2] In *City of New Boston*, the Texarkana Court of Appeals was confronted with the issue of whether the City of Texarkana was protected by governmental immunity from tort claims brought by other cities. *Id.* at 783. In considering the issue, the court recognized that both parties, being municipalities, were political subdivisions of the state. *Id.* at 781. Because both parties were politi-

cal subdivisions, they both enjoyed governmental immunity to the extent it had not been abrogated by the Legislature. *Id.* at 782. As here, the cities suing the City of Texarkana argued that Texarkana could not claim immunity "because immunity is designed to protect against actions brought by private parties, not against actions brought by other subdivisions of the state." *Id.* In support of their argument, the cities relied on *City of Eagle Pass*. The Texarkana Court of Appeals, however, distinguished *City of Eagle Pass*:

> The court in *City of Eagle Pass* summarized its reasoning by agreeing that "because municipalities and other political subdivisions of the state exist under the authority of the state and are subject to the state's regulatory authority, such entities do not enjoy sovereign immunity *from state regulatory authority.*" *City of Eagle Pass*, 14 S.W.3d at 803 (emphasis added). While Texarkana's and the [cities'] authority derives from the state, neither party can exercise regulatory authority over the other. They are, instead, considered coequal under the law, neither party superior to the other. They share a common origin, but are wholly independent of each other and unlike a municipality attempting to exert immunity against a sovereign from which its rights and privileges were originally obtained, immunity for these cities remains as viable a defense as when involved in a dispute by any other completely independent party.

*Id.* The Texarkana Court of Appeals also noted that "courts generally apply sovereign immunity analyses in disputes be-

---

1. During oral argument, the School District argued that it was the state of Texas. We disagree. The School District is a political subdivision of the state, but it is not the state of Texas. The School District is a local governmental entity concerned with its own local interests.

2. The School District emphasizes that the Texas Supreme Court in *Tooke v. City of Mexia*, 197 S.W.3d 325 (Tex.2006), abrogated the Texarkana Court of Appeals's opinion in *City of New Boston*. However, *City of Mexia* abrogated *City of New Boston* on other grounds.

tween state agencies." *Id.* at 783. Thus, the court concluded that "sovereign immunity principles are to be applied horizontally between governmental entities." *Id.* "That is, political subdivisions of government cannot assert immunity against the sovereign from which its immunity is derived, but can assert immunity against other governmental entities deriving their rights and privileges from the same source." *Id.* We agree with the Texarkana Court of Appeals's analysis and hold that unless governmental immunity has been waived, the Fund has governmental immunity from claims brought by the School District. *See also Harris County Mun. Util. Dist. v. Harris County,* No. 01–03–01045–CV, 2005 WL 1365187, at *1 n. 1 (Tex.App.-Houston [1st Dist.] 2005, pet. filed) (citing *City of New Boston* and explaining that "immunity principles generally apply 'horizontally between governmental entities' ").[3]

### B. Tort Claims Brought by the School District

■ If governmental immunity does exist between political subdivisions, then the School District has not shown a waiver of immunity for its tort claims. The Texas Tort Claims Act provides for a limited waiver of immunity from liability for torts:

> A governmental unit in the state is liable for:
>
> > (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 2005).

The School District does not argue that its claims fall within the Texas Tort Claims Act, nor does it cite to any other statute waiving immunity. Thus, all tort claims brought by the School District against the Fund should have been dismissed for lack of jurisdiction.

### C. Contractual Claims by the School District

■ As noted previously, governmental immunity has two components: immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether. *Tooke v. City of Mexia,* 197 S.W.3d 325, 332 (Tex. 2006). "By entering into a contract, a governmental entity necessarily waives immunity from liability, voluntarily binding itself like any other party to the terms of agreement, but it does not waive immunity

---

3. Further, we note that the supreme court has analyzed governmental immunity in the context of two political subdivisions suing one another and never mentioned that governmental immunity would not exist between them. *See Fort Worth Indep. Sch. Dist. v. City of Fort Worth,* 22 S.W.3d 831 (Tex.2000) (holding that genuine issues of material fact existed as to whether by entering into an arrangement with the school district, the city waived immunity from liability); *see also Ben Bolt,* 212 S.W.3d at 326–28 (holding that the fund was entitled to governmental immunity but that chapter 271 was a legislative waiver of immunity from suit).

from suit." *Id.* And, because "[i]t is the province of the Legislature to consent to a suit against a governmental entity," we defer to the Legislature to waive immunity from suit. *Ben Bolt–Palito Blanco Consol. Independent School District v. Texas Political Subdivisions Property/Casualty Joint Self–Insurance Fund,* 212 S.W.3d 320, 326 (Tex.2006). "[T]his allows the Legislature to protect its policymaking function." *Id.* "To ensure that this legislative control is not lightly disturbed, a waiver of immunity must be *clear and unambiguous.*" *Tooke,* 197 S.W.3d at 332–33 (emphasis added); *see* TEX. GOV'T CODE ANN. § 311.034 (Vernon Supp.2006) ("In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and ambiguous language.").

According to the Fund, the Legislature has not clearly and unambiguously waived immunity from suit with respect to the School District's contract claims. In response, the School District argues that the Legislature waived immunity for governmental entities entering into contracts pursuant to House Bill 2039, now codified in chapter 271 of the Local Government Code.

Chapter 271 defines a "local governmental entity" as a political subdivision of the state. *See* TEX. LOC. GOV'T CODE ANN.

§ 271.151(3) (Vernon 2005). It also waives immunity from suit for certain claims:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating[4] a claim for breach of the contract, subject to the terms and conditions of this subchapter.

*Id.* § 271.152. A "contract subject to this subchapter" is defined as "a written contract stating the essential terms of the *agreement for providing goods or services to the local governmental entity* that is properly executed on behalf of the local governmental entity." *Id.* § 271.151(2) (emphasis added).[5] The Fund brings two arguments: (1) chapter 271 applies to contracts where a party "provides goods or services *to the local governmental entity*" and because the School District (i.e. the party) was not providing goods or services to the Fund (i.e. the local governmental entity), but instead was receiving services from the Fund, chapter 271 does not apply; and (2) chapter 271 does not apply because there is a more specific statute, chapter 2259 of the Government Code, providing that the "maintenance of a self-insurance program by a governmental unit is *not a waiver of immunity.*"

Recently, the Texas Supreme Court addressed both these issues in *Ben Bolt–Palito Blanco Consol. Independent School District v. Texas Political Subdivisions*

---

**4.** "Adjudication" of a claim is defined as "the bringing of a civil suit and prosecution to final judgment in county or state court and includes the bringing of an authorized arbitration proceeding and prosecution to final resolution in accordance with any mandatory procedures established in the contract subject to this subchapter for the arbitration proceedings." TEX LOC. GOV'T CODE ANN. § 271.151(1) (Vernon 2005).

**5.** Although the effective date of this statute was September 1, 2005, the statute also applies to claims arising under a contract executed before the effective date if sovereign immunity has not been waived with respect to the claim before the effective date. Act of May 23, 2005, 79th Leg., R.S., ch. 604, §§ 2–3, 2005 Tex. Gen. Laws 1548, 1549. Thus, although the contract between the Fund and the School District was entered into in 2000, the statute applies retroactively.

*Property/Casualty Joint Self–Insurance Fund,* 212 S.W.3d 320 (Tex.2006). As here, in *Ben Bolt,* the school district entered into a contract with a self-insurance fund, composed of local governments, pursuant to the Texas Interlocal Cooperation Act. *Id.* at 322–23. And, like here, after the school district's claim for benefits under the policy was denied, the school district filed a declaratory-judgment action seeking a determination that the loss was a covered occurrence under the insurance agreement's terms. *Id.* The self-insurance fund responded by filing a plea to the jurisdiction and a motion to dismiss, asserting governmental immunity barred the suit. *Id.* The trial court denied the plea, but the court of appeals reversed and dismissed the case for want of jurisdiction. *Id.* In its petition to the supreme court, the school district argued that the newly enacted chapter 271 waived immunity from suit. *Id.* The supreme court agreed. *Id.*

In holding that chapter 271 waived immunity from suit, the supreme court found unpersuasive the fund's argument that the plain language of chapter 271 does not apply to the insurance contract because of the *to/from* distinction:

> It is true that Ben Bolt is a consumer of insurance that the Fund offers. But the relationship between the Fund and its members differs from the ordinary consumer/seller relationship. As the Fund has acknowledged, its members elect a governing board, and a board subcommittee resolves claims disputes. To that extent, at least, the Fund's members provide services to the Fund. Moreover, the statute's legislative history indicates that, by enacting section 271.152, the Legislature intended to loosen the im-

munity bar so "that *all* local governmental entities that have been given or are given the statutory authority to enter into contracts shall not be immune from suits arising from those contracts." HOUSE COMM. ON CIVIL PRACTICES, BILL ANALYSIS, Tex. H.B.2039, 79th Leg., R.S. (2005) (emphasis added). There is no indication that the Legislature intended to exclude self-insurance fund agreements from enforcement. While the mere act of self-insuring does not itself constitute a waiver of immunity, *see* TEX. GOV'T CODE § 2259.031, entering into "a written contract stating the essential terms of [an] agreement for providing goods or [insurance] services to [a] local governmental entity" clearly does. TEX. LOC. GOV'T CODE §§ 271.151(2), 271.152.

*Id.* at 327 (alteration in original) (emphasis in original). Thus, not only did the supreme court hold that chapter 271 applied to the contract between the fund and the school district, but it also held that chapter 271 applied despite chapter 2259's language. *Id.*

Applying *Ben Bolt* to the facts presented here, we hold that chapter 271 waives immunity from suit for the contractual claims brought by the School District.[6]

### D. Declaratory Judgment Action

The Fund also argues that it is immune from the School District's declaratory judgment claim because the claim is nothing more than a "back-door effort" to raise the breach of contract claims and circumvent immunity. The Fund emphasis that in *Texas Natural Resource Conservation Commission v. IT–Davy,* 74 S.W.3d 849,

---

**6.** Because we have held that with respect to contract claims immunity from suit has been waived, we need not address the School District's argument that the Fund waived immunity under *Reata Construction Corp. v. City of*

*Dallas,* 197 S.W.3d 371 (Tex.2006), by requesting attorney's fees in the prayer of its answer and in its motion for summary judgment.

855 (Tex.2002), the supreme court held that a party cannot "circumvent the State's sovereign immunity from suit by characterizing a suit for money damages, such as a contract dispute, as a declaratory-judgment claim." *Id.*

If we had held that immunity from suit had not been waived with respect to the contractual claims, then the Fund would have been correct—the School District could not have circumvented immunity by characterizing their dispute as a declaratory-judgment claim. However, because we have held that immunity from suit has been waived, the School District's declaratory-judgment action is not barred by the holding in *IT–Davy.*

### CONCLUSION

Because governmental immunity from suit prevents the School District from bringing tort claims against the Fund, we reverse the trial court's order in part and render judgment that the School District's tort claims against the Fund are dismissed for lack of jurisdiction. However, with respect to all other claims brought by the School District, we affirm the trial court's order denying the plea to the jurisdiction.