Affirmed and Memorandum Opinion filed July 24, 2007








Affirmed and Memorandum Opinion filed July 24, 2007.

 

                                                                               


 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00475-CV

____________

 

RAUL G. GARZA, Appellant

 

V.

 

THE CITY OF HOUSTON, Appellee

 



 

On Appeal from the 151st
District Court

Harris County, Texas

Trial Court Cause No. 05-03994

 



 

M E M O R A N D U M    O P I N I O N

Appellant, Raul G. Garza, appeals the trial court=s granting of
summary judgment in favor of the City of Houston.  In two issues Garza argues
(1) the trial court erred in granting summary judgment and (2) there is a material
fact at issue that should have been presented to a jury.  We affirm.








Responding to a Code 1BAassault in
progress with weapon@Bcall, Officer
Arthur Carbonneau of the Houston Police Department (AHPD@) drove east on
West Little York with his overhead lights, siren, and air horn activated.[1] 
At the Antoine intersection, he had a red light.  According to Carbonneau, he
came to a complete stop, observed the traffic yield to him, and then proceeded
through the intersection, where he was hit by Garza=s car.  Carbonneau=s car was pushed
across the intersection where it collided with a traffic signal pole. 
According to the witness statements on the police report, Garza=s car struck the
patrol car in the center of the driver=s side.  All the
witnesses agreed Carbonneau slowed or came to a rolling stop before entering
the intersection.  All the witnesses agreed the patrol car=s overhead red lights
and siren were activated as Carbonneau drove through the intersection.  One
witness stated Carbonneau did everything he could to avoid the accident.

Garza contends he had a green light and was almost through
the intersection when Carbonneau hit his car.  Garza sued the City for
negligence under the Texas Torts Claim Act (ATTCA@), specifically,
Section 101.021(1).  Tex. Civ. Prac.
& Rem. Code Ann. ' 101.021(1) (Vernon 2005).[2] 
Garza argues the City is liable for the damages caused by its agent.  Tex. Civ. Prac. & Rem. Code Ann. ' 101.0215(a)(1)
(Vernon 2005).  The trial court granted summary judgment in favor of the City
based on the affirmative defense of sovereign immunity.

We review the trial court=s summary judgment
de novo.  Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex.
2005).  In reviewing a summary judgment, we take as true all evidence favorable
to the nonmovant, and we indulge every reasonable inference and resolve any
doubts in the nonmovant=s favor.  Id.  Summary judgment is
proper if the defendant disproves at least one element of each of the plaintiff=s claims, or
establishes all the elements of an affirmative defense to each claim.  Am.
Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997).  








The State, its agencies, and subdivisions, such as cities,
generally enjoy governmental immunity from tort liability unless immunity has
been waived.  Tex. Civ. Prac. &
Rem.Code '' 101.001(3)(A) & (B) (Vernon 2005), 101.025 (Vernon 2005); Ben Bolt-Palito Blanco Consol.
Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins.
Fund, 212 S.W.3d 320, 324 (Tex. 2006).  The TTCA provides a limited waiver
of sovereign or governmental immunity, allowing suits to be brought against
governmental units only in certain, narrowly defined circumstances.  Tex.
Dep=t of Criminal Justice v. Miller, 51 S.W.3d 583,
587 (Tex. 2001).  The TTCA specifically provides this limited waiver in three
areas: (1) use of a publicly owned automobile; (2) premise defects; and (3)
injuries arising out of conditions or use of property.  Tex. Civ. Prac. & Rem.Code Ann. ' 101.021; Tex.
Dep=t of Parks & Wildlife v. Miranda, 133 S.W.3d 217,
225 (Tex. 2004).  A plaintiff must affirmatively demonstrate the court=s jurisdiction by
alleging a valid waiver of immunity.  Dallas Area Rapid Transit v. Whitley,
104 S.W.3d 540, 542 (Tex. 2003).  








Although Section 101.021(1) of the TTCA waives immunity for
claims arising from the use of a motor-driven vehicle by a governmental
employee, the government retains its immunity from suit if one of the
exceptions to the waiver of immunity in the TTCA applies.  Tex. Civ. Prac. & Rem. Code Ann. ' 101.021(1);
Tex. Dep=t. of Transp. v. Garza, 70 S.W.3d 802,
806 (Tex. 2002).  An exception to the waiver  for emergency action is found in
Section 101.055 of the Civil Practices and Remedy Code.[3] 
Tex. Civ. Prac. & Rem. Code Ann.
' 101.055(2)
(Vernon 2005).  Section 101.055(2) excludes the Aoperation of
emergency vehicles in emergency situations from the general waiver of immunity
for negligent operation of governmental vehicles.@  City of
Amarillo v. Martin, 971 S.W.2d 426, 430 (Tex. 1998).  Therefore, liability
is waived only if the operator committed an act that the operator knew or
should have known posed a high degree of risk of serious injury.[4] 
Id.  

Official immunity is an affirmative defense that protects
governmental employees from personal liability.  Telthorster v. Tennell,
92 S.W.3d 457, 460 (Tex. 2002).  AA governmental
employee is entitled to official immunity for (1) the performance of
discretionary duties (2) that are within the scope of the employee=s authority, (3)
provided that the employee acts in good faith.@  Id. at
461 (citing City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex.
1994)).  When official immunity shields a government employee from liability,
the government employer is shielded from liability under the doctrine of
sovereign immunity.  University of Houston v. Clark, 38 S.W.3d 578, 580
(Tex. 2000).








It is undisputed that, at the time of the accident,
Carbonneau was an on-duty police officer, in an HPD patrol car, responding to
an emergency call.  Thus, he was performing a discretionary act within the
scope of his authority.  See Chambers, 883 S.W.2d at 655, 658 (finding
on-duty police officer=s high speed chase a discretionary act
within scope of his authority); Weatherly v. Derby, No. 14-01-00548-CV,
2002 WL 1789701, at *1 (Tex. App.CHouston [14th
Dist.] Aug. 1, 2002, no pet.) (not designated for publication) (stating
discharge of duties generally assigned to police officer responding to
emergency call is discretionary act within scope of his authority).  Therefore,
having met the first two prongs of the official immunity test, the City is
entitled to summary judgment if the evidence establishes as a matter of law
Carbonneau=s response to the Code 1 call was in good faith.  See
Wadewitz v. Montgomery, 951 S.W.2d 464, 466 (Tex. 1997) (finding government
employee has immunity from actions performed within his discretionary duties if
employee acts in good faith).  Good faith depends on how a reasonably prudent
police officer would have assessed both the need for the officer=s response and the
risks of the officer=s course of action.  Id. at 467
(applying Chambers, 883 S.W.2d at 656). 

In his affidavit,
Carbonneau addressed the need/risk balancing test as follows:

Due to my years of experience with the police department and responding
to emergency calls, I have developed a good understanding of how dangerous
calls involving weapons can be and the need to have officers present to
deescalate [sic] the situation.  At the time of the accident, I believed in
good faith that the need to get to the scene outweighed the minimal risk of
accident.  I properly assessed the need for me to get to the scene of the
assault involving weapons quickly against the risk of accident by entering the
intersection and in good faith determined that my lights were clearly visible,
my siren was clearly audible, and that vehicles were properly yielding right of
way to me.  

Carbonneau
decided the risk, based on his emergency lights and siren being activated and
the cars yielding to his vehicle, to be outweighed by the need to respond to
the assault with a Aweapon call.@  Thus, Carbonneau
established he assessed the need for his action by considering the seriousness
of the situation and the necessity of his immediate presence to control the
situation and prevent injury or loss of life versus the possibility of an
accident.  See Clark, 38 S.W.3d at 581 (stating an officer acts in bad
faith only if he could not have reasonably reached the decision that the need
to respond outweighed the clear risk to the public of harm).  The only question
remaining is whether no reasonably prudent police officer would agree with
Carbonneau=s assessment.








Sergeant Tymniak
of the Metro Police Department, who was in the first car in the turn lane at
the intersection, observed the entire incident.  He saw Carbonneau=s approach, his
entrance into the intersection, and the accident.  In his deposition, Tymniak
stated he was a Metro officer; had completed the 240-hour academy for peace
officers under the Texas Commission on Education StandardsBOfficer Standards
and Education; had previously been a police officer in the City of Jersey
Village; and had received training in emergency response.  Tymniak explained
Carbonneau slowed to a Arolling stop@ of less than 5
miles per hour, assessed the situation, and then accelerated as he proceeded
through the intersection.[5] 
He also stated Carbonneau=s car approached and entered the
intersection with the emergency lights and siren engaged, and that the cars at
the intersection yielded, except for Garza=s.  Further
questions revealed:

Q:  Would it be B would you say that the HPD officer
approached the intersection recklessly?

A:  No, ma=am.

Q:  In your opinion, how would you characterize how he approached the
intersection?

A:  Based on prior observations of other type [sic] situations, the
officer exercised due caution.  He reduced his speed to a reasonably and
prudent speed prior to entering the intersection.

He made, apparently, an assumption that traffic was
going to let him pass through because cars had stopped.  And immediately, he
started to accelerate once he entered the intersection.  Not prior but once he
entered the intersection.  

And at that point in time, the impact occurred.

Q:  And which B how did the vehicles impact in the
intersection?  Which one struck which one?

A:  Mr. Garza=s vehicle, a red vehicle, entered
the intersection and struck the officer=s vehicle, who was already in the intersection, as he was
accelerating.  Left side of the officer=s vehicle.[6]

* * *

Q: Would you say, based on your
life=s experience and your profession,
whether or not Officer Carbonneau was driving and operating his B an emergency vehicle appropriately
at the time of the accident?     

A: Yes.








Thus,
the City presented summary judgment evidence that a reasonably prudent police
officer, in the same or similar circumstances, could have believed that the
actions Carbonneau performed were reasonable.  

In his response to the City=s motion for
summary judgment, Garza presented no evidence to contradict any material fact. 
In his brief, Garza concluded Carbonneau acted Ahaphazardly,@ but the record
offers no controverting evidence that no reasonably prudent officer
could have believed the facts justified Carbonneau=s conduct.  See
Chambers, 883 S.W.2d at 657 (holding nonmovant must show no reasonable person
in the officer=s position could think officer=s actions
justified).  In his affidavit, Garza claims he did not see the patrol car=s emergency lights
or hear the sirens; he did not directly state that Carbonneau was not
running his emergency lights, siren, and horn.  See Burke v. Satterfield,
525 S.W.2d 950, 955 (Tex. 1975) (stating an affidavit must be direct,
unmistakable, and unequivocal as to the facts sworn to, so that perjury can be
assigned upon it).  Similarly, Garza=s affidavit states
that when he Awas about to reach the other end of the intersection,@ Carbonneau Acame out of
nowhere without warning and crashed into my vehicle.@  It continues
that as Garza Awas about to reach the other end of the intersection,@ he looked right
and saw Carbonneau Arunning through the intersection@ and that Carbonneau
never Astopped nor
appeared to slow down.@  However, these comments appear to
pertain to when Carbonneau was already in the intersection and accelerating,
not as he approached the intersection and was slowing.  Therefore, Garza
offered no proof as to Carbonneau=s approach to the
intersection or the reasonableness of his assessment of the situation.  Thus,
Garza did not raise an issue of material fact challenging Carbonneau=s good faith.








Garza contends an issue of material fact exists as to
whether his car hit Carbonneau=s, or Carbonneau=s car hit his
car.  We first observe that this issue is not dispositive of whether Carbonneau
was acting in good faith when he entered the intersection.  Moreover, in his
affidavit, Garza states he entered the intersection with a green light.  He
argues that the logical inference is Carbonneau=s light was red. 
However, emergency vehicles have the privilege of proceeding through a red
light in emergency situations.  Martin, 971 S.W.2d at 431.  AIn operating an
authorized emergency vehicle, the operator may . . . proceed past red or stop
signal or stop sign after slowing as necessary for safe operation.@  Tex. Transp. Code Ann. ' 546.001(2)
(Vernon 1999) (emphasis added).  Based on the competent summary judgment
evidence, it is uncontested Carbonneau slowed before proceeding through the
intersection.

Further, Garza claims he was almost through the
intersection when Carbonneau hit his car.  However, the damage to Garza=s car was directly
to its front, while the damage to the patrol car was in the center of the
driver=s side.  The
police report and eyewitness statements corroborated Carbonneau=s assertion that
Garza hit the patrol car.  Garza=s affidavit
claiming the patrol car hit his car is self-serving and conclusory, supported
by no independent facts and, therefore, does not raise an issue of material
fact.  See Purcell v. Bellinger, 940 S.W.2d 599, 602 (Tex. 1997)
(finding that conclusory statements unsupported by facts are not proper summary
judgment proof); Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex. 1984)
(finding affidavits consisting only of conclusions insufficient to raise
issues of fact). 

After examining the record, we find the City established an
exception to the waiver of immunity under the TTCA.  Accordingly, Carbonneau is
protected by official immunity and the City is entitled to governmental
immunity.  We therefore overrule Garza=s two issues and
affirm the judgment of the trial court.

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

Judgment rendered
and Memorandum Opinion filed July 24, 2007.

Panel consists of
Chief Justice Hedges and Justices Hudson and Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  Carbonneau is no longer a Houston Police Officer as
he resigned for reasons unrelated to this incident.





[2]  Although not included within his Third Amended
Petition, Garza would also be required to prove  that Apersonal injury and death so caused by a condition or
use of tangible personal or real property if the governmental unit would, were
it a private person, be liable to the claimant according to Texas law.@  Tex. Civ.
Prac. & Rem. Code Ann. '
101.021(2).





[3]  Section 101.055(2) states in pertinent part:

This
chapter does not apply to a claim arising:

***

(2) from the action of an employee while responding to an emergency
call or reacting to an emergency situation if the action is in compliance with
the laws and ordinances applicable to emergency action, or in the absence of
such a law or ordinance, if the action is not taken with conscious indifference
or reckless disregard for the safety of others;  . . .

Tex. Civ. Prac. & Rem.
Code Ann. ' 101.055(2).

 





[4]  Additionally, the law applicable to emergency action
in this context is Section 546.005 of the Texas Transportation Code.  Tex. Transp. Code Ann. ' 546.005 (Vernon 1999).  In interpreting the
predecessor of section 546.005, the Texas Supreme Court held that although this
provision imposes a duty to drive with due regard for others by avoiding
negligent behavior, it only imposes liability for reckless conduct.  Martin,
971 S.W.2d at 431; City of Amarillo v. Pruett, 44 S.W.3d 702, 705 (Tex.
App.CAmarillo 2001, pet. denied). 





[5]  Garza=s
brief contends the difference between a complete stop, as Carbonneau states in
his affidavit, and a Arolling stop@ as
stated in Tymniak=s deposition, constitutes a fact question for the
jury.  However, the difference is of no consequence.  The City, for the purpose
of this appeal, concedes Carbonneau made a rolling stop.  Also, Tymniak reached
his conclusions, pertaining to a reasonable police officer=s actions, based on the fact that Carbonneau executed
a Arolling stop.@





[6]  Tymniak added that Garza was driving approximately
35 miles per hour, and did not appear to be slowing down at the time of impact.