

In The
Court of Appeals
Seventh District of Texas at Amarillo

_____

No. 07-12-00374-CV

_____

WEST TEXAS MUNICIPAL POWER AGENCY, APPELLANT

V.

REPUBLIC POWER PARTNERS, L.P., APPELLEE

On Appeal from the 237th District Court
Lubbock County, Texas
Trial Court No. 2012-501,169, Honorable Paul Davis, Presiding

February 5, 2014

OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

This is an accelerated appeal wherein Appellant, West Texas Municipal Power Agency (WTMPA), challenges the trial court's interlocutory order denying its plea to the jurisdiction in a suit filed by Appellee, Republic Power Partners, L.P., for breach of contract and breach of warranties. WTMPA contends the trial court erred in denying its plea to the jurisdiction because it is an entity entitled to governmental immunity under the facts of this case. Presenting two issues countering Republic Partner's position that immunity does not apply or was statutorily waived, WTMPA contends (1) the

proprietary/governmental distinction employed in the Texas Tort Claims Act, and (2) the waiver of immunity provisions of chapter 271 of the Texas Local Government Code do not operate as to deny WTMPA the protections of governmental immunity. For the reasons to follow, we affirm.

## BACKGROUND

In 1983 the cities of Brownfield, Floydada, Lubbock and Tulia formed WTMPA for the purpose of obtaining a reliable and adequate source of electric energy for its citizens.[1] WTMPA is a municipal power agency created pursuant to subchapter C of chapter 163 of the Texas Utilities Code. *See* TEX. UTIL. CODE ANN. § 163.054(a) (West 2007). A municipal power agency created pursuant to this subchapter is a separate municipal corporation, a political subdivision of this State, and a political entity and corporate body distinct from the public entities creating it. *See id.* at § 163.054(c). A municipal power agency is expressly authorized to enter into contracts necessary to the full exercise of its powers, which includes the authority to enter into a contract, lease or agreement for the generation, transmission, sale or exchange of electric energy. *See id.* at § 163.060.

WTMPA currently obtains the electric energy it resells to its member cities from Southwestern Public Service (SPS). Under the *Power Purchase Agreement* with SPS, WTMPA is required to purchase all of its electric energy from SPS through May 2019. In 2007, WTMPA was notified by SPS that the existing *Power Purchase Agreement*

---

[1] Two members from each city sit on the board of WTMPA. A "majority-in-interest" required for voting on important issues is determined by the number of kilowatt hours purchased by each member city each year. This formula gave Lubbock a 92.8% "majority-in-interest" vote.

would not be renewed.  At that time, WTMPA began contemplating how it was going to supply electric energy to its member cities after expiration of the existing *Power Purchase Agreement.*  WTMPA ultimately negotiated and executed a *Development Agreement* with Republic Power, a private business entity, for the purpose of forming a partnership to develop, finance and operate future electric energy generation and transmission facilities.[2]

Under the *Development Agreement,* Republic Power was responsible for managing the development process which included the identification and evaluation of new sources of electric energy.[3] The agreement obligated Republic Power to secure adequate private investment capital to complete the necessary feasibility studies and to

---

[2] Municipal power agencies are expressly authorized to contract with private persons.  *See* TEX. UTIL. CODE ANN. § 163.060(b)(2)(C) (West 2007).

[3] Section 2.4 of the *Development Agreement* expressly provides that Republic Power be responsible for, and have authority to take, all actions it deems necessary to perform the agreement, including:

(a) Retaining engineers, attorneys, accountants, financial advisors and other professionals . . . .
(b) Identifying potential Sites and negotiating for the acquisition of such Sites.
(c) Commissioning and preparing site surveys . . . .
(d) Selecting technology for the Project and negotiating for the acquisition or license of such technology.
(e) Designing or supervising the design of the Project . . . .
(f) Applying for such Governmental Approvals as may be required for the Project.
(g) Preparing such bid documents as may be required . . . .
(h) Negotiating contracts for the procurement of renewable and thermal energy to be utilized by the Project.
(i) Negotiating the acquisition of (or options to acquire) easements and rights of way . . . .
(j) Negotiating contracts for Utilities.
(k) Negotiating contracts for the sale or other disposition of energy, capacity and End Products.
(l) Developing a plan of financing, preparing financing documents, preparing offering documents and doing all related work necessary to achieve an Initial Closing.
(m) Developing a Market Standard package of insurance for the Project.
(n) Selecting Trustee candidates and negotiating one or more Trust Indentures under which the Bonds will be issued.
(o) Selecting investment bankers, underwriter counsel and bond counsel to perform activities related to the Project.
(p) Negotiating and preparing drafts of any Project Owner Contracts, including agreements pertaining to the purchase or sale of any goods, services, fuel, electricity or other elements incident to the operation of the Project.

3

implement the findings and recommendations of those studies. The *Development Agreement* further required WTMPA to form a local government corporation to own and operate any electric energy generation or transmission facility to be built and to issue bonds to finance their construction.

The *Development Agreement* was executed August 1, 2008, and on September 25, 2008, WTMPA's Board of Directors unanimously approved High Plains Diversified Energy Corporation as the local government corporation designated to own and operate the electric energy generation and transmission facilities contemplated by the agreement. Thereafter, one addendum dated July 23, 2009, and two amendments dated October 9, 2009, and May 18, 2011, were added to the *Development Agreement*. Initially, per the *Development Agreement*, the "Project Owner" was WTMPA, but those rights and obligations were assigned to High Plains.

Over the next three years, Republic Power raised millions in capital and expended considerable sums completing feasibility studies and arranging for financing of the project. The *Development Agreement* provided for issuance of first mortgage revenue bonds by the local government corporation, ultimately High Plains, for the purpose of obtaining the balance of the funds necessary to complete the project. In furtherance of that financing obligation, a bond validation hearing was ultimately scheduled in a Lubbock County district court to approve issuance of the revenue bonds.

Prior to that hearing, at a regularly scheduled meeting of the board of High Plains, a dispute arose as to the allocation of any surplus revenue generated by the project. Due to its greater usage of the electric energy to be generated, the City of

4

Lubbock believed it should receive a greater percentage of any surplus revenue. The Board of Directors disagreed and ultimately, at the bond validation hearing, the City of Lubbock objected to issuance of the revenue bonds by arguing High Plains was not a valid local government corporation and WTMPA did not have the authority to create it. The district court agreed with the City of Lubbock and dismissed the bond validation proceeding with prejudice. As a result, no revenue bonds were ever issued.

After the bond validation suit failed, Republic Power filed the underlying suit against the City of Lubbock and WTMPA alleging breach of the *Development Agreement*. Initially, Republic Power alleged that WTMPA breached the agreement but sought to hold the City of Lubbock liable under a joint enterprise theory. Both defendants filed pleas to the jurisdiction asserting immunity from suit. Republic Power then amended its petition to allege the City of Lubbock directly breached the *Development Agreement*. In response, the City of Lubbock filed an amended plea to the jurisdiction. Following a hearing, the trial court granted the City of Lubbock's amended plea but denied WTMPA's plea. This appeal followed.[4]

## STANDARD OF REVIEW—PLEA TO THE JURISDICTION

The party suing a governmental entity bears the burden of affirmatively demonstrating the trial court has jurisdiction to hear the dispute. *Tex. Dep't. of Criminal*

---

[4] In a related appeal decided this same date, Republic Power challenged the trial court's order granting the City of Lubbock's plea to the jurisdiction. *See Republic Power Partners, L.P. v. The City of Lubbock*, No. 07-12-00438-CV, 2014 Tex. App. LEXIS ___, (Tex. App.—Amarillo Feb. 5, 2014, no pet. h.). In that opinion, we held the trial court did not err when it granted the City of Lubbock's plea to the jurisdiction because (1) the proprietary/governmental dichotomy did not apply to contract disputes, and (2) the waiver of immunity provisions of section 271.152 of the Texas Local Government Code do not apply so as to waive the City of Lubbock's immunity claims.

5

*Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001). A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit. *Bland Independent School Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). In the context of a claim of sovereign or governmental immunity, the proponent of a plea to the jurisdiction contends the trial court lacks subject matter jurisdiction over the claim because it is protected by immunity from suit which has not been legislatively waived. Because immunity from suit defeats a trial court's subject matter jurisdiction, *Tex. Dep't. of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999), a plea to the jurisdiction is the proper way to assert a claim of sovereign or governmental immunity from suit. *Bland*, 34 S.W.3d at 555.

Whether a court has subject matter jurisdiction is a question of law. *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). Therefore, if the evidence creates a fact question regarding the existence of jurisdictional facts, the trial court cannot grant the plea to the jurisdiction and the fact issue must be resolved by the fact finder. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227-28 (Tex. 2004). A court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence submitted by the parties, and it must do so, when necessary to resolve the jurisdictional issues raised. *Bland*, 34 S.W.3d at 555. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Miranda,* 133 S.W.3d at 228. Accordingly, we review a trial court's ruling on a plea to the jurisdiction under a *de novo* standard of review. *Tex. D.O.T. & Edinburg v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 166 (Tex. 2012); *Miranda*, 133 S.W.3d at 226. In doing so, we

exercise our own discretion and redetermine each legal issue, without giving deference to the lower court's decision. *See Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1999) (op. on reh'g).

## SOVEREIGN/GOVERNMENTAL IMMUNITY

Sovereign immunity protects the State, as well as its agencies and officials from lawsuits for damages and from liability. *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Texas Political Subdivs. Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 323-24 (Tex. 2006); *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). Similarly, the common law doctrine of governmental immunity protects political subdivisions of the State, including counties, cities and school districts. *Ben Bolt,* 212 S.W.3d at 324. Under the doctrines of sovereign and governmental immunity, it has long been recognized that there are two separate components to immunity: (1) immunity from liability, which bars enforcement of a judgment against a governmental entity, and (2) immunity from suit, which bars suit against the governmental entity altogether. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). Accordingly, the State and its political subdivisions are protected from both lawsuits and liability unless (1) immunity does not apply to the claim or (2) immunity has been waived. *IT-Davy*, 74 S.W.3d at 853*.*

These components of immunity have come to be applied in a variety of circumstances to promote the pragmatic purpose of immunity, which is to "shield the public from the costs and consequences of improvident actions of their governments." *Tooke,* 197 S.W.3d at 332. Therefore, in the context of a suit arising from a breach of

7

contract, a governmental entity may necessarily waive immunity from liability by entering into the contract, thereby binding itself to the terms of the agreement, but not waive immunity from suit.  *Id.  See Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 405-06 (Tex. 1997).

Immunity may, however, be waived and the Legislature has the exclusive authority to do so by statute.  To ensure that this legislative control is not lightly disturbed, statutes waiving immunity are strictly construed as not waiving immunity unless that waiver is effected by "clear and unambiguous" language.  *See* TEX. GOV'T CODE ANN. § 311.034 (West 2013).  *See also Oncor Elec. Delivery Co. LLC v. Dallas Area Rapid Transit*, 369 S.W.3d 845, 849 (Tex. 2012); *Tooke*, 197 S.W.3d at 332-33. Any ambiguity should be resolved in favor of retaining immunity.  *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697 (Tex. 2003).

In determining whether immunity has been waived, the Texas Supreme Court has consistently deferred to the Legislature, because doing so allows the Legislature to protect the complex policymaking function surrounding suits against governmental entities.  *IT-Davy*, 74 S.W.3d at 853-54.  As more fully discussed below, the Texas Legislature adopted section 271.152 of the Texas Local Government Code to deal with the waiver of governmental immunity in the context of a breach of contract claim.  *See* § 271.152.[5]  The Supreme Court has specifically held that "legislative control over sovereign immunity allows the Legislature to respond to changing conditions and revise

---

[5] Unless otherwise indicated, this and all future references to sections refer to the Texas Local Government Code.

8

existing agreements if doing so would benefit the public." *Tooke*, 197 S.W.3d at 332 (quoting *IT-Davy*, 74 S.W.3d at 854). With these principles in mind, we turn to the parties' arguments.

## ANALYSIS

As previously stated, WTMPA contends it is entitled to the protections of governmental immunity because (1) the proprietary/governmental distinction employed in the Texas Tort Claims Act and (2) the waiver of immunity provisions of chapter 271 of the Texas Local Government Code do not operate to deny immunity from suit. We start with the undisputed premise that, as a political subdivision of the State, WTMPA is otherwise entitled to governmental immunity.

Proprietary/governmental Dichotomy

Republic Power contends governmental immunity does not apply to the facts of this case because "the construction and operation of an electric utility" is a proprietary function for which there is no immunity. In response to this argument, WTMPA contends immunity does apply because (1) the initial performance of the *Development Agreement* was not a proprietary function; and, even if it was, (2) the proprietary/governmental dichotomy used to determine whether a governmental entity is immune from suit under the Texas Tort Claims Act does not apply to contractual disputes. Without further discussion of the merits of this issue, for the reasons stated in *Republic Power Partners, L.P. v. The City of Lubbock*, No. 07-12-00438-CV, 2014 Tex. App. LEXIS ___, (Tex. App.—Amarillo Feb. 5, 2014, no pet. h.), we find the proprietary/governmental distinction employed in the Texas Tort Claims Act does not

apply to contract disputes and does not, therefore, operate to deny WTMPA the protections of governmental immunity with respect to the claims being asserted by Republic Power in this suit.[6] Issue one is overruled.

Statutory Waiver of Immunity

Republic Power further contends governmental immunity was waived pursuant to the provisions of chapter 271 of the Texas Local Government Code; whereas WTMPA contends that it was not. On this point, we agree with the position taken by Republic Power.

In the context of a breach-of-contract claim against a governmental entity, there is but one route to the courthouse and that route is through section 271.152. *General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 597 (Tex. 2001). Section 271.152 provides:[7]

> [a] local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of contract, subject to the term and conditions of this subchapter.

---

[6] We are aware of the Austin Court of Appeals's decision in *City of Georgetown v. Lower Colorado River Authority*, 413 S.W.3d 803 (Tex. App.—Austin 2013, pet. filed Dec. 30, 2013). Because that opinion was issued before the Supreme Court denied petition in *City of San Antonio ex. rel. City Public Service Board v. Wheelabrator Air Pollution Control, Inc.*, 381 S.W.3d 597 (Tex. App.—San Antonio 2012, pet. denied), and for the reasons stated in *Republic Power Partners, L.P. v. City of Lubbock*, No. 07-12-00438-CV, 2014 Tex. App. LEXIS __, (Tex. App.—Amarillo Feb. 5, 2014, no pet. h.), we respectfully reject the reasoning expressed in that opinion.

[7] The subchapter referenced in § 271.152 is subchapter I of Chapter 271, entitled "ADJUDICATION OF CLAIMS ARISING UNDER WRITTEN CONTRACTS WITH LOCAL GOVERNMENTAL ENTITIES." TEX. LOCAL GOV'T CODE ANN. §§ 271.151 – 271.160 (West 2005).

Section 271.152 provides a clear and unambiguous waiver of governmental immunity from suit in the context of a breach of contract claim. *City of Dallas v. Albert,* 354 S.W.3d 368, 377 (Tex. 2011); *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.,* 320 S.W.3d 829, 838 (Tex. 2010). By enacting section 271.152 in 2005, the Legislature made a conscious decision "to loosen the immunity bar so that all local governmental entities that have been given the statutory authority to enter into contracts shall not be immune from suits arising from those contracts." *Ben Bolt*, 212 S.W.3d at 327. This legislative policy encourages private entities to enter into contracts with local governmental entities without fear of being denied access to the courts in the event of a contractual dispute.

The analysis of whether waiver of immunity applies must necessarily focus on the contractual language and relationship of the parties. *See Ben Bolt*, 212 S.W.3d at 327 (finding the relationship between a claimant and governmental entity to be different from "the ordinary consumer/seller relationship"). For the waiver of immunity provisions to apply, three requirements must be established: (1) the party against whom the waiver is asserted must be a local governmental entity; (2) the entity must be authorized by statute or the Constitution to enter into contracts; and (3) the entity must in fact have entered into a contract that is "subject to this subchapter." *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011).

The first two requirements for waiver of immunity are not in dispute in this case. As stated above, WTMPA is a municipal power agency created pursuant to subchapter C of chapter 163 of the Texas Utilities Code. *See* TEX. UTIL. CODE ANN. § 163.054(a) (West 2007). As such, WTMPA is a political subdivision of this State, *id.* at §

11

163.054(c), and a local governmental entity, TEX. LOCAL GOV'T CODE ANN. § 271.151(3) (West 2005), authorized by statute to enter into contracts. *See* TEX. UTIL. CODE ANN. § 163.060 (West 2007). It is the third requirement, to-wit: whether a contract "subject to this subchapter" exists, that is at the heart of WTMPA's contention that waiver does not apply to the facts of this case and therefore, the trial court erred in denying its plea to the jurisdiction.

Contract Subject to Subchapter I

A "contract subject to [subchapter I]" is defined as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity . . . ." *See* § 271.151(2). *See also Albert*, 354 S.W.3d at 377. Accordingly, five elements must be met to determine if the contract is "subject to this subchapter." It must be (1) in writing, (2) state the essential terms, (3) provide for goods or services, (4) to the local governmental entity, and (5) be executed on behalf of the local governmental entity. *See Williams*, 353 S.W.3d at 135. It is WTMPA's specific contention that the contract in dispute does not provide for "goods or services" to a local governmental entity.

WTMPA's argument is two-fold. WTMPA first contends the *Development Agreement* does not provide goods or services to a local government entity because all rights, duties and obligations arising from the agreement were to be assigned to High Plains. Secondly, WTMPA contends that no goods or services were actually provided to it during the "development period" of the contract.

Assignment Argument

WTMPA contends the *Development Agreement* is not an agreement to provide goods or services to it because "all rights and obligations" under the agreement were assigned to High Plains. This argument fails for at least two reasons.

First, waiver of immunity is triggered by the mere act of entering into a contract for goods or services. *See* § 271.152. While an assignment may bear on questions of ultimate liability, once waived, the assignment of any of the rights, privileges, duties or obligations arising under the agreement does not revive that which had already been waived.

Secondly, WTMPA contends immunity was not waived because it is not liable under the contract by reason of the assignment. This argument simply begs the question. Issues concerning the merits of the claim are distinct from issues concerning the subject matter jurisdiction of the trial court. *See Miranda*, 133 S.W.3d at 226. Accordingly, the assignment of the *Development Agreement* to High Plains is irrelevant to the issue of waiver.

Goods or Services Argument

WTMPA next contends the *Development Agreement* is not a contract for goods or services because "no goods or services of any kind were to be provided to WTMPA under the express terms of the [agreement]." To analyze this argument we must focus on the nature and purpose of the agreement.

13

WTMPA exists for the purpose of providing a reliable and adequate source of electric energy to its member cities and to generate revenues for those cities. Currently, WTMPA purchases electric energy from SPS and resells that power to its member cities. Because that source of electric energy is scheduled to terminate in 2019, WTMPA entered into the *Development Agreement* with Republic Power for the purpose of ensuring that facilities capable of generating and transmitting its electric energy needs would be constructed and operational before that date.[8] Because developing and constructing electric energy generation and transmission facilities can take years, the *Development Agreement* contemplated a development period during which the parties would "evaluat[e] new sources for power generation and transmission, rais[e] capital and acquir[e] feasibility studies for the design, development, engineering, financing, legal, regulatory, construction and operations of any project."

The *Development Agreement* specifically contemplates that Republic Power would identify and evaluate potential sources of electric energy generation and transmission and that it would be responsible for managing the development process. Specifically, Republic Power agreed to obtain necessary feasibility studies for the design, development, engineering, regulation, construction, and operation of any electric energy generating facility. Additionally, the agreement charged Republic Power with the responsibility of securing adequate private investment capital to complete the feasibility studies and implement the findings and recommendations of those studies. In

---

[8] The opening paragraphs of the *Development Agreement* specifically provide that it is made and entered into by and between West Texas Municipal Power Agency and Republic Power Partners, L.P. for the purpose of providing "a number of diverse, ongoing opportunities to maximize the economic benefits for public and private entities within the Project Area [to be] derived from renewable as well as traditional energy resources."

14

an effort to comply with those responsibilities, Republic Power pursued completion of both feasibility studies and financing options by engaging the services of consultants, engineers, financial advisors, attorneys and accountants. For almost three years, Republic Power worked with WTMPA in the performance of the *Development Agreement* for the ultimate purpose of providing WTMPA and its member cities with a reliable source of electric energy*.*

While chapter 271 of the Texas Local Government Code does not specifically define "goods or services" that term is a sufficiently broad enough term to encompass a wide array of activities.[9] *Kirby Lake Dev., Ltd.*, 320 S.W.3d at 839. It includes generally any act performed for the benefit of another under some arrangement or agreement whereby such act was to have been performed. *Id.* (quoting *Creameries of Am. v. Indus. Comm'n*, 98 Utah 571, 102 P.2d 300, 304 (Utah 1940)). *But see Berkman v. City of Keene*, 311 S.W.3d 523, 527 (Tex. App.—Waco 2009, pet. denied) (holding the statute does not apply to contracts in which the benefit that the local government entity would receive is an indirect, attenuated one).

---

[9] "Goods" have been defined in other statutes as follows: (1) "tangible personal property," TEX. FIN. CODE ANN. §§ 345.002(a) and 371.003 (West 2006); (2) "real or tangible personal property," TEX. TAX CODE ANN. § 171.1012 (West Supp. 2013); (3) "minerals or the like (including oil and gas) or a structure or its materials to be removed from realty," TEX. BUS. & COM. CODE ANN. § 2.107 (West 2009); (4) "property, tangible or intangible, real, personal, or mixed, and any article, commodity, or other thing of value, including insurance," *id.* at § 15.03(2); (5) "tangible chattels or real property purchased or leased for use," *id.* at § 17.45(1); (6) "supplies, materials, or equipment," TEX. GOV'T CODE ANN. § 2155.001(1) (West 2008). Likewise, "services" has been defined in other statutes as follows: (1) "work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods," TEX. BUS. & COM. CODE ANN. § 17.45(2) (West 2011); and (2) "any act performed, anything supplied, and any facilities used or supplied by a public utility in the performance of the utility's duties . . . . " TEX. UTIL. CODE ANN. § 11.003(19) (West 2007); (3) "services primarily intended to guide governmental policy to ensure the orderly and coordinated development of the state or of municipal, county, metropolitan, or regional land areas," TEX. LOCAL GOV'T CODE ANN. § 252.001(5) (West 2005); (4) "services within the scope of the practice . . . of . . . professional engineering," TEX. GOV'T CODE ANN. § 2254.002(a)(vii) (West 2008); (5) "skilled or unskilled labor or professional services, as defined by Section 2254.002, Government Code," TEX. LOCAL GOV'T CODE ANN. § 176.001(6) (West 2008).

The *Development Agreement* clearly contemplated the performance of acts leading to the development and implementation of a plan ultimately resulting in the construction and operation of a power generating facility, which would then provide electricity to WTMPA and its member cities. It matters not that the dispute arose during the development stage of this agreement when the objective of the agreement was to plan for the ultimate acquisition of a good or service. Parsing a long-term high technology procurement contract,[10] such as the research and development of an electric energy production and delivery system, into "phases" where the ultimate goal is to provide something as complex as a public utility does not serve the legislative purposes of section 271.152.

Furthermore, the goods or services provided to the governmental entity need not be the primary purpose of the contract, *Kirby Lake Dev.*, *Ltd.*, 320 S.W.3d at 839, or even form the basis of the dispute. *Ben Bolt,* 212 S.W.3d at 327. In *Ben Bolt*, the Supreme Court liberally construed a government-pooled insurance policy (the Fund) as encompassing "services" rendered by its members based on the fact the Fund's members elected a governing board and a board subcommittee resolved claims disputes. *Id.* at 327. This function, the Court determined was a provision of services from the Fund's members to the Fund. *Id.* In this case, WTMPA sought and received planning and development services—services essential to ultimate acquisition of electric energy and services which were clearly intended to benefit WTMPA and its member cities. Therefore, we find the *Development Agreement* provides for the

---

[10] "'High technology procurement' means the procurement of equipment, goods or services of a highly technical nature, including: . . . (C) electronic distributed control systems, including building energy management systems . . . ." TEX. LOCAL GOV'T CODE ANN. § 252.001(4) (West 2005).

16

delivery of goods or services to a local governmental entity and we conclude section 271.152 waives immunity from suit for the purpose of adjudicating Republic Power's breach of contract claims. Issue two is overruled. Accordingly, we hold the trial court did not err in denying WTMPA's plea to the jurisdiction as to those claims.

## CONCLUSION

We affirm the trial court's order denying WTMPA's plea to the jurisdiction on Republic Power's claims for breach of contract.

Patrick A. Pirtle
Justice