

In The

Court of Appeals

Seventh District of Texas at Amarillo

_____

No. 07-12-00438-CV
_____

REPUBLIC POWER PARTNERS, L.P., APPELLANT

V.

THE CITY OF LUBBOCK, APPELLEE

On Appeal from the 237th District Court
Lubbock County, Texas
Trial Court No. 2012-501,169; Honorable Paul Davis, Presiding

February 5, 2014

OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

This is an accelerated appeal wherein Appellant, Republic Power Partners, L.P., challenges the trial court's order granting the plea to the jurisdiction filed by Appellee, the City of Lubbock, in a suit filed by Republic Power claiming breach of contract and breach of warranties by the City of Lubbock and West Texas Municipal Power Agency (WTMPA). Presenting three issues, Republic Power questions whether the trial court erroneously granted the plea to the jurisdiction given that (1) the City of Lubbock was

engaged in a proprietary function for which it has no immunity from suit, (2) governmental immunity has been waived for written contract claims against local governmental entities under section 271.152 of the Texas Local Government Code, and (3) the City of Lubbock waived its immunity from suit by its conduct. For the reasons to follow, we affirm.

## FACTUAL BACKGROUND

In 1983 the cities of Brownfield, Floydada, Lubbock and Tulia formed WTMPA for the purpose of obtaining a reliable and adequate source of electric energy for its citizens. WTMPA is a municipal power agency created pursuant to subchapter C of chapter 163 of the Texas Utilities Code. *See* § 163.054(a). A municipal power agency created pursuant to this subchapter is a separate municipal corporation, a political subdivision of this State, and a political entity and corporate body distinct from the public entities creating it. *See id*. at § 163.054(c). A municipal power agency is expressly authorized to enter into contracts necessary to the full exercise of its powers, which includes the authority to enter into a contract, lease or agreement for the generation, transmission, sale or exchange of electric energy. *See id*. at § 163.060.

WTMPA currently obtains the electric energy it resells to its member cities from Southwestern Public Service (SPS). Under the *Power Purchase Agreement* with SPS, WTMPA is required to purchase all of its electric energy from SPS through May 2019. In 2007, WTMPA was notified by SPS that the existing *Power Purchase Agreement* would not be renewed. At that time, WTMPA began contemplating how it was going to supply electrical energy to its member cities after expiration of the existing *Power*

*Purchase Agreement*.  WTMPA ultimately negotiated and executed a *Development Agreement* with Republic Power, a private business entity, for the purpose of forming a partnership to develop, finance and operate future electric energy generation and transmission facilities.[1]

The *Development Agreement* required WTMPA to form a local government corporation to own and operate a power generation facility and issue bonds to finance its construction.  The *Development Agreement* was executed on August 1, 2008, and on September 25, 2008, WTMPA's Board of Directors unanimously approved High Plains Diversified Energy Corporation as the local government corporation designated to own and operate the electric energy generation and transmission facilities contemplated by the agreement.  Thereafter, one addendum dated July 23, 2009, and two amendments dated October 9, 2009, and May 18, 2011, were added to the *Development Agreement*.  Initially, per the *Development Agreement*, the "Project Owner" was WTMPA, but those rights and obligations were assigned to High Plains.

Over the next three years, Republic Power raised millions in capital and expended considerable sums completing feasibility studies and arranging for financing of the project.  The *Development Agreement* provided for issuance of first mortgage revenue bonds by the local government corporation, ultimately High Plains, for the purpose of obtaining the balance of the funds necessary to complete the project.  In furtherance of that financing obligation, a bond validation hearing was ultimately scheduled in a Lubbock County district court to approve issuance of the revenue bonds.

---

[1] Municipal power agencies are expressly authorized to contract with private persons.  *See* TEX. UTIL. CODE ANN. § 163.060(b)(2)(C) (West 2007).

Prior to that hearing, at a regularly scheduled meeting of the board of High Plains, a dispute arose as to the allocation of any surplus revenue generated by the project. Due to its greater usage of the electric energy to be generated, the City of Lubbock believed it should receive a greater percentage of any surplus revenue. The Board of Directors disagreed and ultimately, at the bond validation hearing, the City of Lubbock objected to issuance of the revenue bonds by arguing High Plains was not a valid local government corporation and WTMPA did not have the authority to create it. The district court agreed with the City of Lubbock and dismissed the bond validation proceeding with prejudice. As a result, no revenue bonds were ever issued.

After the bond validation suit failed, Republic Power filed the underlying suit against the City of Lubbock and WTMPA alleging breach of the *Development Agreement*. Initially, Republic Power alleged that WTMPA breached the agreement but sought to hold the City of Lubbock liable under a joint enterprise theory. Both defendants filed pleas to the jurisdiction asserting immunity from suit. Republic Power then amended its petition to allege the City of Lubbock directly breached the *Development Agreement*. In response, the City of Lubbock filed an amended plea to the jurisdiction. Following a hearing, the trial court granted the City of Lubbock's amended plea but denied WTMPA's plea. This appeal followed.[2]

---

[2] In a related appeal decided this same date, WTMPA challenged the trial court's order denying its plea to the jurisdiction. *See West Texas Municipal Power Agency v. Republic Power Partners, L.P.*, No. 07-12-00374-CV, 2014 Tex. App. LEXIS ___, (Tex. App.—Amarillo Feb. 5, 2014, no pet. h.). In that opinion, we held the trial court did not err when it denied WTMPA's plea to the jurisdiction because the waiver of immunity provisions of section 271.152 of the Texas Local Government Code do apply so as to waive WTMPA's immunity claims.

The party suing a governmental entity bears the burden of affirmatively demonstrating the trial court has jurisdiction to hear the dispute. *Tex. Dep't. of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001). A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit. *Bland Independent School Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). In the context of a claim of sovereign or governmental immunity, the proponent of a plea to the jurisdiction contends the trial court lacks subject matter jurisdiction over the claim because it is protected by immunity from suit which has not been legislatively waived. Because immunity from suit defeats a trial court's subject matter jurisdiction, *Tex. Dep't. of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999), a plea to the jurisdiction is the proper way to assert a claim of sovereign or governmental immunity from suit. *Bland*, 34 S.W.3d at 555.

Whether a court has subject matter jurisdiction is a question of law. *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). Therefore, if the evidence creates a fact question regarding the existence of jurisdictional facts, the trial court cannot grant the plea to the jurisdiction and the fact issue must be resolved by the fact finder. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227-28 (Tex. 2004). A court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence submitted by the parties, and it must do so, when necessary to resolve the jurisdictional issues raised. *Bland*, 34 S.W.3d at 555. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Miranda,* 133

S.W.3d at 228.  Accordingly, we review a trial court's ruling on a plea to the jurisdiction under a *de novo* standard of review.  *Tex. D.O.T. & Edinburg v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 166 (Tex. 2012); *Miranda*, 133 S.W.3d at 226.  In doing so, we exercise our own discretion and redetermine each legal issue, without giving deference to the lower court's decision.  *See Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1999) (op. on reh'g).

SOVEREIGN/GOVERNMENTAL IMMUNITY

Sovereign immunity protects the State, as well as its agencies and officials, from lawsuits for damages and from liability.  *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Texas Political Subdivs. Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 323-24 (Tex. 2006); *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). Similarly, the common law doctrine of governmental immunity protects political subdivisions of the State, including counties, cities and school districts.  *Ben Bolt,* 212 S.W.3d at 324.  Under the doctrines of sovereign and governmental immunity, it has long been recognized that there are two separate components to immunity: (1) immunity from liability, which bars enforcement of a judgment against a governmental entity, and (2) immunity from suit, which bars suit against the governmental entity altogether. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006).  Accordingly, the State and its political subdivisions are protected from both lawsuits and liability unless (1) immunity does not apply to the claim or (2) immunity has been waived.  *IT-Davy*, 74 S.W.3d at 853*.*

These components of immunity have come to be applied in a variety of

circumstances to promote the pragmatic purpose of immunity, which is to "shield the public from the costs and consequences of improvident actions of their governments." *Tooke,* 197 S.W.3d at 332. Therefore, in the context of a suit arising from a breach of contract, a governmental entity may necessarily waive immunity from liability by entering into the contract, thereby binding itself to the terms of the agreement, but not waive immunity from suit. *Id. See also Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 405-06 (Tex. 1997).

Immunity may, however, be waived and the Legislature has the exclusive authority to do so by statute. To ensure that this legislative control is not lightly disturbed, statutes waiving immunity are strictly construed as not waiving immunity unless that waiver is effected by "clear and unambiguous" language. *See* TEX. GOV'T CODE ANN. § 311.034 (West 2013). *See also Oncor Elec. Delivery Co. LLC v. Dallas Area Rapid Transit*, 369 S.W.3d 845, 849 (Tex. 2012); *Tooke*, 197 S.W.3d at 332-33. Any ambiguity should be resolved in favor of retaining immunity. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697 (Tex. 2003).

In determining whether immunity has been waived, the Texas Supreme Court has consistently deferred to the Legislature, because doing so allows the Legislature to protect the complex policymaking function surrounding suits against governmental entities. *IT-Davy*, 74 S.W.3d at 853-54. As more fully discussed below, the Texas Legislature adopted section 271.152 of the Local Government Code to deal with the waiver of governmental immunity in the context of a breach of contract claim. *See* TEX. LOCAL GOV'T CODE ANN. § 271.152 (West 2005). The Supreme Court has specifically held that "legislative control over sovereign immunity allows the Legislature to respond

7

to changing conditions and revise existing agreements if doing so would benefit the public." *Tooke*, 197 S.W.3d at 332 (quoting *IT-Davy*, 74 S.W.3d at 854). With these principles in mind, we turn to the parties' arguments.

## ANALYSIS

Proprietary/Governmental Dichotomy

By its first issue, Republic Power contends the trial court erred in granting the City of Lubbock's plea to the jurisdiction because immunity does not apply to suits arising from the performance of a proprietary function. Specifically, Republic Power contends that because "the construction and operation of an electric utility" is a proprietary function, no governmental immunity exists. We disagree.

In presenting this argument, Republic Power seeks to incorporate the proprietary/governmental distinction from common law and the Texas Tort Claims Act, TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021-.029 (West 2011), into this breach of contract claim. WTMPA contends the City of Lubbock was engaged in a proprietary function when it entered into the *Development Agreement* for the express purpose of providing electrical energy to the citizens of West Texas, and thus no immunity from suit exists against a claim based on that agreement. Relying on *Tooke*, 197 S.W.3d at 343, and *City of Galveston v. Posnainsky*, 62 Tex. 118, 133-34, 1884 Tex. LEXIS 196, at *32 (1884), WTMPA contends the Court has repeatedly held that immunity does not apply to tort claims arising from the governmental performance of proprietary functions. WTMPA seeks to extend that interpretation to contract claims by contending that the public policies underlying the proprietary/governmental dichotomy suggest no real

8

justification for treating contract claims any different than tort claims. WTMPA also relies on three Texas courts of appeals' decisions to support its claim: *Temple v. City of Houston*, 189 S.W.3d 816, 820-21 (Tex. App.—Houston [1st Dist.] 2006, no pet.), *Casso v. City of McAllen*, No. 13-08-00618-CV, 2009 Tex. App. LEXIS 2049, at *4-6 (Tex. App.—Corpus Christi Mar. 26, 2009, pet. denied) (mem. op.), and *Bailey v. City of Austin*, 972 S.W.2d 180, 192-93 (Tex. App.—Austin 1998, pet. denied).

On the other hand, relying on *City of San Antonio ex. rel. City Public Service Board v. Wheelabrator Air Pollution Control, Inc.*, 381 S.W.3d 597, 603-05 (Tex. App.—San Antonio 2012, pet. denied),[3] the City of Lubbock responds that the proprietary/governmental dichotomy has never been recognized by the Texas Supreme Court in a breach of contract case. Furthermore, recognizing that *Wheelabrator* dealt with an attempt to avoid the doctrine of immunity in the context of a quasi-contractual claim for damages involving a proprietary function, the City of Lubbock further argues that even if immunity was not applicable to a contractual claim arising from a proprietary function, the activity involved in this case, to-wit: the operation and maintenance of an electric utility, was a "classic governmental function" protected by sovereign immunity.[4]

---

[3] In *Wheelabrator,* the San Antonio Court of Appeals held that the Legislature's failure to include the proprietary/governmental dichotomy to contracts in section 271.152 of the Texas Local Government Code meant the dichotomy did not apply, thereby holding the City of San Antonio was immune from suit on Wheelabrator's quantum meruit claim.

[4] While the City of Lubbock contends the activities of the city giving rise to this suit were the performance of a governmental function, Republic Power contends the Texas Supreme Court and the Texas Legislature have both defined the construction and operation of an electric power utility as a proprietary—not governmental—function. *See San Antonio Indep. Sch. Dist. v. City of San Antonio*, 550 S.W.2d 262, 264 (Tex. 1976); Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(b)(1) (West Supp. 2013). For purposes of this opinion we will assume, without deciding, that the City of Lubbock was engaging in a proprietary function.

The Texas Tort Claims Act clearly waives a municipality's governmental immunity from liability and suit for certain tort claims arising out of its governmental functions. A municipality's "governmental functions" are those functions conducted "in the performance of purely governmental matters solely for the public benefit." *Tooke*, 197 S.W.3d at 343 (quoting *Dilley v. City of Houston*, 148 Tex. 191, 222 S.W.2d 992, 993 (1949)). Specifically, the Legislature provided that a municipality is not immune from liability for damages arising out of its "governmental functions," which it went on to define as "those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public . . . ." Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a) (West Supp. 2013). In the non-exhaustive list contained in the Texas Tort Claims Act, the Legislature did not include the operation and maintenance of a public utility as a governmental function. *See id.* In contrast, the Legislature specifically excluded from this waiver of immunity all claims arising from a municipality's performance of a "proprietary function," which it went on to define as including "the operation and maintenance of a public utility." *Id.* at § 101.0215(b); *Tooke*, 197 S.W.3d at 343 (holding that a municipality's proprietary functions are those functions conducted "in its private capacity, for the benefit only of those within its corporate limits, and not as an arm of the government").

In arguing for the application of this proprietary/governmental dichotomy in the context of a breach of contract claim, Republic Power argues that a municipality is not immune from claims arising out of its proprietary acts because under common law, when a municipality engages in a proprietary function, it is subject to the same duties

10

and liabilities as private citizens and corporations. *See Gates v. City of Dallas*, 704 S.W.2d 737, 739 (Tex. 1986) (holding that "[c]ontracts made by municipal corporations in their proprietary capacity have been held to be governed by the same rules as contracts between individuals").[5] In pursuing this argument Republic Power fails to distinguish the two distinct components of immunity: (1) immunity from liability and (2) immunity from suit. *Tooke*, 197 S.W.3d at 332. Interpreting contracts by the "same rules" is a function of liability, not a function of immunity from suit. Another serious flaw in Republic Power's argument is that the common law principle it relies upon pre-dates the adoption of both the Texas Tort Claims Act and the 2005 legislative enactment of subchapter I of chapter 271 of the Texas Local Government Code, entitled *Adjudication of Claims Arising Under Written Contracts With Local Governmental Entities. See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021-.029 (West 2011) and TEX. LOCAL GOV'T CODE ANN. § 271.152 (West 2005).

By enacting subchapter I of chapter 271 of the Texas Local Government Code, the Legislature specifically sought to waive immunity to suit for *certain claims* arising under written contracts with governmental entities. § 271.152; *Kirby Lake Dev.*, *Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 838 (Tex. 2010). In 2006, the Court stated that this section was enacted "to loosen the immunity bar so that *all* local

---

[5] In *Gates*, the Texas Supreme Court acknowledged the common law principle that a city has immunity for governmental functions performed as an agent for the State "in furtherance of general law for the interest of the public at large," while at the same time acknowledging that "proprietary functions have subjected municipal corporations to the same duties and liabilities as those incurred by private persons and corporations." 704 S.W.2d at 738-39. The broad application of this principle to non-tort proprietary functions has, however, been called into question. *See Lower Colo. River Auth. v. City of Boerne*, No. 04-13-00108-CV, 2013 Tex. App. LEXIS 15498, at *7-8 (Tex. App.—San Antonio Jan. 8, 2013, no pet.); *Wheelabrator,* 381 S.W.3d at 604. The Supreme Court itself has put this broad interpretation into question when it used a compare signal when citing *Gates* immediately after explicitly stating that it has never held the proprietary/governmental distinction applies to determining whether immunity from suit is waived for breach of contract claims arising from the performance of a proprietary function. *Tooke*, 197 S.W.3d at 343, n.89.

governmental entities that have been given . . . the statutory authority to enter into contracts shall not be *immune from suits* arising from those contracts." *Ben Bolt*, 212 S.W.3d at 327 (second emphasis added). Specifically, section 271.152 provides, "[a] local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter." This language is a clear and unambiguous waiver of governmental immunity from suit for a breach of contract claim falling within the category of contracts subject to subchapter I of chapter 271. *City of Dallas v. Albert*, 354 S.W.3d 368, 377 (Tex. 2011) (holding that section 271.152 is a clear and unambiguous waiver of governmental immunity for breach of contract suits falling within the category of contracts subject to subchapter I of chapter 271).

"As it had already done in the tort-claims context [through the Texas Tort Claims Act], the Legislature could have incorporated the proprietary/governmental distinction into the statutory waiver scheme for contract claims; however, it chose not to incorporate that distinction into a contract setting." *Wheelabrator*, 381 S.W.3d at 603. We must presume the Legislature knew and understood exactly what it was doing when it enacted 271.152, and that it deliberately and purposefully omitted that distinction when it selected the words and phrases that it enacted. *Id.* at 603-04. Because it is the Legislature's function to weigh competing interests and establish public policy, specifically in the realm of governmental immunity, we conclude the Legislature did make a policy decision regarding the proprietary/governmental dichotomy – and that policy decision was that the doctrine of immunity applies to contract claims arising from

proprietary functions, subject to specific provisions of waiver found in section 271.152. *Id.* at 604.

As mentioned above, WTMPA relies on three Texas courts of appeals' decisions to support its position that immunity from suit does not apply because the City of Lubbock was engaging in a proprietary function. In *Temple,* the First District Court of Appeals held the City of Houston had no governmental immunity from a breach of contract suit because it was performing a proprietary function when it provided life insurance benefits to its employees. 189 S.W.3d at 819-21. Similarly, in *Bailey,* the Third Court of Appeals, relying on *Gates*, 704 S.W.2d at 739, and "[s]trictly construing the doctrine of municipal immunity *against* the municipality," held the City of Austin did not have governmental immunity because it was performing a proprietary function. 972 S.W.2d 193 (emphasis added). Finally, in *Casso,* the Thirteenth Court of Appeals held that paying employee health insurance premiums amounted to a proprietary function that prevented the City of McAllen from asserting governmental immunity. 2009 Tex. App. LEXIS at *14. Because *Temple* and *Bailey* were decided before *Tooke* was issued and prior to the enactment of subchapter I of chapter 271 of the Texas Local Government Code, we question their reasoning and find them to be inapposite to this case. Because *Casso* incorrectly relies on *Tooke* and *Temple* for the *carte blanche* proposition that "a municipality is not immune from suit when it engages in the exercise of proprietary functions," we simply reject its reasoning. *Id.*

Finding the reasoning of the San Antonio Court of Appeals in *Wheelabrator* to be convincing, we extend that ruling to find immunity does apply to claims arising from the

13

breach of an express contract arising out of the performance of a proprietary function.[6] Issue one is overruled.

Statutory Waiver of Immunity

By its second issue, Republic Power maintains the trial court erroneously granted the City of Lubbock's plea to the jurisdiction because immunity, if any, was waived under section 271.152. Again, we disagree.

Consistent with our disposition of issue one, there is but one route to the courthouse for breach-of-contract claims against a governmental entity, and that route is through section 271.152. *General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 597 (Tex. 2001). By enacting section 271.152, the Legislature specifically provided that a local governmental entity "waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of contract, subject to the terms and conditions of [subchapter I]." § 271.152; *Kirby Lake*, 320 S.W.3d at 838. A "contract subject to this subchapter" is defined as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity". *See* § 271.151(2). *See also Albert*, 354 S.W.3d at 377.

For the statute's wavier of immunity to apply, three requirements must be established: (1) the party against whom the waiver is asserted must be a local

---

[6] We are aware of the Austin Court of Appeals's decision in *City of Georgetown v. Lower Colorado River Authority*, 413 S.W.3d 803 (Tex. App.—Austin 2013, pet. filed Dec. 30, 2013). Because that opinion was issued before the Supreme Court denied petition in *City of San Antonio ex. rel. City Public Service Board v. Wheelabrator Air Pollution Control, Inc.*, 381 S.W.3d 597 (Tex. App.—San Antonio 2012, pet. denied), and for the reasons stated herein, we respectfully reject the reasoning expressed in that opinion.

governmental entity; (2) the entity must be authorized by statute or the Constitution to enter into contracts; and (3) the entity must in fact have entered into a contract that is "subject to this subchapter." *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011). Additionally, five elements must be met to determine if the contract is "subject to this subchapter." It must be (1) in writing, (2) state the essential terms, (3) provide for goods or services, (4) to the local governmental entity, and (5) be executed on behalf of the local governmental entity. *See* § 271.151(2). *See also Williams*, 353 S.W.3d at 135.

The opening paragraph of the *Development Agreement* provides it is "made and entered into . . . by and between West Texas Municipal Power Agency, a Texas joint power agency and municipal corporation ('WTMPA') *comprised of* the cities of Brownfield, Floydada, Lubbock and Tulia . . . ." (Emphasis added). Republic Power argues that WTMPA entered into the *Development Agreement* "on behalf of itself and the Cities" and it was executed on their behalf for purposes of section 271.152. The "RECITALS" portion of the *Development Agreement* does recognize a distinction between WTMPA and the cities themselves. Specifically, paragraphs C and D contain language that the "Project Owner" acts "on behalf of [WTMPA] *and* the Cities." (Emphasis added). However, those recitals apply only to certain determinations and not to obligations under the *Development Agreement*.

The *Development Agreement* further provides in part:

IN WITNESS WHEREOF, the parties hereto have caused the Agreement to be executed by their proper officers respectively, being thereunto duly authorized, and their respective seals to be hereto affixed . . . .

15

In that regard, the signature page of the *Development Agreement* is signed by Gary Brown on behalf of WTMPA and John N. Crew on behalf of Republic Power. None of the cities involved in the formation of WTMPA are listed as signatories in the contract. The addendum and both amendments are also signed by Brown, Crew and Scott Collier, President of High Plains. WTMPA was named the "Project Owner" until it assigned the *Development Agreement* to High Plains who, in turn, became the "Project Owner."

While Republic Power acknowledges the City of Lubbock was not a signatory to the *Development Agreement*, it argues it should be held liable under the circumstances of this particular case. According to Republic Power, the City of Lubbock's insistence on nearly 100% of surplus revenue generated by the project equated it with being WTMPA.[7] We disagree. WTMPA is a municipal power agency created under chapter 163 of the Texas Utilities Code. It is a separate municipal corporation and is governed by its own board of directors. The City of Lubbock is not WTMPA.

Despite being named in the opening paragraph, the City of Lubbock and the other member cities were not parties to the *Development Agreement*, addendum or amendments. None of the documents are executed on behalf of any of the cities, and although Texas law recognizes that a contract need not be signed to be "executed" unless the parties explicitly require signatures, *Mid-Continent Cas. Co. v. Global Enercom Mgmt.*, 323 S.W.3d 151, 157 (Tex. 2010), there is no intent that the City of Lubbock was considered a party or even a third party beneficiary to the *Development*

---

[7] In its *Second Amended Petition*, Republic Power alleges Lubbock's City Manager asserted at a High Plains Board of Director's closed meeting that "Lubbock is [West Texas]" and deserves more than 25% of the revenue.

*Agreement.* To the contrary, section 10.11 of the *Development Agreement* specifies that the "provisions of the Agreement are for the exclusive benefit of the Project Owner and Republic Power" and provides only for Texas Tech University as a third party beneficiary per section 3.4(c) of the *Development Agreement.*

A contract generally binds no one except the parties to it. *BML Stage Lighting, Inc. v. Mayflower Transit, Inc.*, 14 S.W.3d 395, 400 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). The City of Lubbock, as a member city, was "no more than an incidental beneficiary" to the creation of WTMPA for the purpose of providing electric energy to the communities involved. *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 420 (Tex. 2011). Accordingly, we conclude the City of Lubbock did not enter into the *Development Agreement* and no one executed it on behalf of the City. Consequently, two critical elements that must be satisfied for waiver of immunity to apply are absent and section 271.152 does not apply to the facts of this case. Therefore, we hold the trial court did not err in finding that the Legislature did not waive the City of Lubbock's immunity from suit pursuant to section 271.152 and thereby granting its plea to the jurisdiction. Issue two is overruled.

Waiver by Conduct

By its third and final issue, Republic Power asserts the City of Lubbock's plea to the jurisdiction was erroneously granted because immunity from suit was waived by its conduct.[8] We disagree. Republic Power further asserts the City of Lubbock waived its immunity, if any, by engaging in certain conduct, to-wit: knowingly entering into the

---

[8] Republic Power candidly acknowledges that waiver by conduct is rare but presents the argument to preserve the issue in the event of further appeal of the case.

17

*Development Agreement*, attempting to gain more than its 25% share of revenues, and then killing the deal by intervening in the bond validation action when it did not get its way on the surplus revenues issue.

The Texas Supreme Court has rejected the invitation to recognize an exception for waiver of immunity by conduct.  *See IT-Davy*, 74 S.W.3d at 857.  *See also Sharyland Water Supply Corp.*, 354 S.W.3d at 414.  This Court has also refused to recognize waiver of immunity by conduct.  *See Leach v. Tex. Tech Univ.*, 335 S.W.3d 386, 400-01 (Tex. App.—Amarillo 2011, pet. denied).  Issue three is overruled.

## CONCLUSION

We affirm the trial court's order granting the City of Lubbock's plea to the jurisdiction on Republic Power's claims for breach of contract.

Patrick A. Pirtle
Justice